COMMONWEALTH *vs.* JOSE AGOSTO[1]
(and seven companion cases[2]).

Hampden. May 7, 1998. - July 21, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Motor Vehicle,* Forfeiture. *Search and Seizure,* Automobile, Expectation of privacy, Warrant.

Discussion of the automobile exception to the requirement for a search warrant. [33-34]

This court concluded that a warrantless search of an automobile, conducted by the police twenty-one days after the automobile had been seized and impounded, was not lawful where there were no exigent circumstances or safety concerns that made it unreasonable for the police to seek a warrant prior to the search [34-35]; moreover, the Massachusetts forfeiture statute, G. L. c. 94C, § 47 (*f*) (1), did not operate, upon the seizure of the vehicle, to extinguish the vehicle owner's expectation of privacy so as to justify the warrantless search [35-38].

INDICTMENTS found and returned in the Superior Court Department on August 1, 1996.

Motions to suppress evidence were heard by *John F. Murphy, Jr.,* J.

Motions to consolidate applications for leave to appeal and applications for leave to appeal were allowed by *Lynch, J.,* in the Supreme Judicial Court for the county of Suffolk.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Lori K. Odierna,* Assistant District Attorney, for the Commonwealth.

*Dale E. Bass* for Jose Agosto.

*Colleen Tynan,* Committee for Public Counsel Services (*Benjamin H. Keehn,* Committee for Public Counsel Services, with her) for Ivette Velez.

---

[1] A suggestion of Jose Agosto's death was filed on July 10, 1998. A judge dismissed the indictments on July 14, 1998.

[2] Two indictments against Mitchell Reyes, Ivette Velez, and Dominick Velez, and one against Jose Agosto.

*David J. Gagne* for Mitchell Reyes.

MARSHALL, J. The defendants were indicted on August 1, 1996, for trafficking in cocaine (twenty-eight to one hundred grams), G. L. c. 94C, § 32E (*b*),[3] and for unlawful possession of heroin with intent to distribute, G. L. c. 94C, § 32 (*a*). The defendants moved to suppress evidence seized in two warrantless searches of an automobile. The judge allowed the defendants' motions to suppress the evidence discovered during the second of the two searches, conducted twenty-one days following police seizure of the vehicle. A single justice of this court allowed the Commonwealth's application for leave to appeal. We transferred the cases from the Appeals Court on our own motion.

We summarize the relevant facts found by the judge, which are not in dispute. The Springfield police were conducting a narcotics investigation in the spring of 1996 with a focus on the defendants Ivette Velez and Mitchell Reyes, including surveillance of their residence, and on defendant Jose Agosto. Prior to the defendants' arrest and seizure of the vehicle in question, informants had provided information to the police on heroin distribution activities of the defendants and others that had proved reliable. On June 21, 1996, police received and corroborated information that Reyes and Ivette Velez withdrew from a bank $5,000 for a purchase of two ounces of heroin in New York. Later that same day, the police received information that Reyes, Agosto, and a third unnamed man were traveling that night to New York in a Buick automobile, registered to Ivette Velez, to make the heroin purchase and would return early the next morning. As the Buick left Springfield that evening, the police followed it as far as Hartford, Connecticut. At about 4:10 A.M., the police observed and followed the Buick as it returned to the Springfield area and stopped it close to Reyes's residence. In addition to Reyes and Agosto, the defendant Dominick Velez was in the Buick. A police officer observed a clear packet of heroin on the rear floor of the Buick. Reyes, Agosto, and Dominick Velez were arrested. Seven more

[3]Although there is some confusion, from the record it appears that only heroin, not cocaine, was seized and is the object of the defendants' motions to suppress relevant to this appeal. Because we reach the merits of the judge's ruling suppressing the heroin evidence, and because the issue whether the indictments on cocaine trafficking are defective was not argued either below or on appeal, we express no opinion as to whether the apparent defect in the indictments would be an additional ground to support dismissing the indictments charging trafficking in cocaine.

glassine packets of heroin were discovered in a search of Agosto at the police station.[4] In the trunk of the vehicle the police found many more bags of packaging materials similar to those used to package the eight bags of heroin that were found.

After the initial search, the Buick was secured in a police facility, not accessible to the public, and remained in the possession of the police at all relevant times thereafter. A prosecutor in the Hampden County district attorney's office told police that a warrant was not needed to conduct continuing searches. The vehicle was searched at least ten times. Despite trained police dogs indicating the presence of drugs in the vicinity of the dashboard during these searches, no additional drugs were discovered until July 12, 1996. After receiving information from two informants that two ounces of heroin were still in the Buick, an officer finally recovered sixty grams of heroin from a vent behind a firewall under the dashboard.

Ivette Velez contacted several policemen in an unsuccessful effort to have the Buick returned to her, but was told that the vehicle was seized and that the police had begun forfeiture proceedings. At some time while holding the vehicle, the police contacted the district attorney to begin forfeiture proceedings. Some six weeks after the discovery of the heroin in the dashboard on July 12, the Commonwealth filed a motion for a preliminary order to secure and hold the Buick. The preliminary order was not granted until October 22, 1996.

The Commonwealth argues here as it did below that the warrantless search on July 12, 1996, was permissible under the automobile exception to the warrant requirement. In addition, it raises on appeal two arguments related to the forfeiture of the Buick: because the owner, Ivette Velez, was informed of the police intention to commence forfeiture proceedings, she lost any expectation of privacy in the vehicle that she otherwise may claim; and that we should recognize an exception to the warrant requirement for investigatory searches of vehicles seized pursuant to the forfeiture statute, G. L. c. 94C, § 47.

In *Commonwealth* v. *Markou*, 391 Mass. 27, 29-31 (1984), we thoroughly summarized the rationale, the constitutional basis, and the contours of the automobile exception to the requirement

---

[4]The judge ruled that police had probable cause for the June 22, 1996, stop and search of the vehicle and the search of the occupants incident to their arrest, resulting in the seizure of the eight bags of heroin. He denied the motions to suppress that evidence.

for a search warrant. When there is probable cause to search an automobile stopped on a highway, an immediate search is constitutionally permissible. *Id.* at 29, citing *Carroll* v. *United States,* 267 U.S. 132 (1925). The inherent mobility of an automobile is the exigent circumstance that justifies a warrantless search at the time of a vehicular stop. See *Commonwealth* v. *Motta,* 424 Mass. 117, 124 (1997). The warrantless search continues to be permissible if the police, in the interest of their safety, wait to search a vehicle until after it has been seized and secured and removed to the safe environs of the police station, even though no exigent circumstances then prevail. *Markou, supra* at 29-30, citing *Chambers* v. *Maroney,* 399 U.S. 42 (1970). Nonetheless, we have not endorsed "giving the police carte blanche to search without a warrant any time subsequent to a valid stop." *Id.* at 30-31, citing with approval *State* v. *Quinn,* 290 Or. 383 (1981) (disallowing search twenty-two hours after vehicle impounded). Rather, we have made clear that an "unreasonable delay at the police station will render invalid an otherwise valid search." *Motta, supra* at 125. See *Commonwealth* v. *Bakoian,* 412 Mass. 295, 304-305 (1992); *Commonwealth* v. *Lara,* 39 Mass. App. Ct. 546, 548-549 (1995).[5]

The Commonwealth argues, in effect, that, because there was probable cause to stop and search the Buick on June 22, 1996, and because probable cause to suspect heroin hidden in the Buick continued after that date and was reinforced by further informant tips and by detection of drugs by police dogs, the constitutional requirement of a search warrant was indefinitely suspended by an ongoing automobile exception. The defendants do not contest that the police continued to have probable cause while holding the Buick. It is not the existence of probable cause itself that justifies an exception to the warrant requirement. With such probable cause, the police had a basis for a warrant. In holding the vehicle for an indefinite time, the police also had a "plain and ample" opportunity to obtain a warrant. *Bakoian, supra* at 304, quoting *Commonwealth* v. *Bongarzone,*

---

[5]Where we have approved searches conducted in police stations under the automobile exception to the warrant requirement, the searches were delayed for no more than a matter of hours. See, e.g., *Commonwealth* v. *Motta,* 424 Mass. 117, 125 (1997) ("within five to ten minutes"); *Commonwealth* v. *Bakoian,* 412 Mass. 295, 304 (1992) ("little over one hour"); *Commonwealth* v. *A Juvenile (No. 2),* 411 Mass. 157, 166 (1991) ("no delay"); *Commonwealth* v. *Markou,* 391 Mass. 27, 32 (1984) ("no more than two hours"); *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 351 (1983) ("less than two hours").

390 Mass. 326, 351 (1983). There were no exigent circumstances or safety concerns — the underlying theories justifying warrantless searches of vehicles on the highway and at the police station immediately after a vehicle's seizure — nor were there any other sufficient reasons for the police not to have secured a warrant before conducting at least ten additional searches over a span of twenty-one days. We concur with the judge's ruling of law that such a delay was too long to have "dispensed with the warrant requirement, and to allow reliance on the 'automobile' exception."

We next address the Commonwealth's arguments that an "incident-to-forfeiture" exception to the warrant requirement arises from authority granted to the Commonwealth in G. L. c. 94C, § 47, to seize property for forfeiture. The Commonwealth contends that the operation of that statute serves to extinguish any expectation of privacy by a vehicle owner, once the vehicle has been seized.[6] Relying entirely on several Federal cases that have recognized an incident-to-forfeiture exception to the warrant requirement,[7] the Commonwealth recommends that we recognize such an exception as well.

The relevant provision of the Massachusetts forfeiture statute, G. L. c. 94C, § 47 (*f*) (1), set out in the margin,[8] shows that,

---

[6]These issues were "not fairly raised before the trial judge." *Commonwealth v. Garcia*, 409 Mass. 675, 678 (1991), quoting *Commonwealth v. Lewis*, 346 Mass. 373, 383 (1963), cert. denied, 376 U.S. 933 (1964). During the hearing on the motions to suppress, the Commonwealth established a few facts related to the forfeiture proceedings, but did not develop any legal argument based on forfeiture, relying instead on the automobile exception to justify the warrantless search. The judge apparently did not discern any question presented by the Commonwealth, for he did not address the forfeiture issues in his ruling. Although we need not reach an issue not fairly raised below, we have the power to consider such an issue. *Garcia, supra* at 679. We choose to address this issue here in order to provide guidance to the Commonwealth.

[7]See, e.g., *United States v. Pace*, 898 F.2d 1218, 1245 (7th Cir.), cert. denied sub nom. *Cialoni v. United States*, 497 U.S. 1030, and cert. denied sub nom. *Sairdes v. United States*, 498 U.S. 878 (1990); *United States v. $29,000 U.S. Currency*, 745 F.2d 853, 856 (4th Cir. 1984); *United States v. Harris*, 727 F.2d 401, 404-405 (5th Cir.), cert. denied, 469 U.S. 840 (1984); *United States v. Merryman*, 630 F.2d 780, 785 (10th Cir. 1980); *United States v. Johnson*, 572 F.2d 227, 234 (9th Cir.), cert. denied, 437 U.S. 907 (1978); *United States v. Zaicek*, 519 F.2d 412, 414-415 (2d Cir. 1975); *United States v. Young*, 456 F.2d 872, 874-875 (8th Cir. 1972).

[8]"During the pendency of the proceedings the court may issue at the request of the commonwealth *ex parte* any preliminary order or process as is neces-

unlike under the Federal forfeiture statute,[9] an owner's property rights are not extinguished on the Commonwealth's seizure of property, the Commonwealth must follow statutory procedures subsequent to seizure, and, by a specific reference to G. L. c. 276, procedures for securing search warrants are made applicable to forfeiture proceedings.[10] We fail to see how such explicit statutory linkage to court processes for obtaining search warrants could be interpreted to suspend warrant requirements for investigative searches of seized property prior to any court process. Other statutory provisions give the owner of seized property additional procedural protections. See G. L. c. 94C, § 47 (*d*) (imposing on the Commonwealth "the burden of proving to the court the existence of probable cause to institute the action"); G. L. c. 94C, § 47 (*c*) (providing exceptions to forfeiture that owners may use to defend against the Commonwealth's forfeiture action).

To the extent that the Commonwealth's argument relies on Federal cases construing Federal law and the laws of other States that differ from our statute, it is not germane to an interpretation of Commonwealth rights under the Massachusetts statute. We see much to recommend in the court's conclusion in

sary to seize or secure the property for which forfeiture is sought and to provide for its custody, including but not limited to an order that the commonwealth remove the property if possible, and safeguard it in a secure location in a reasonable fashion; that monies be deposited in an interest-bearing escrow account; and, that a substitute custodian be appointed to manage such property or a business enterprise. Property taken or detained under this section shall not be repleviable, but once seized shall be deemed to be lawfully in the custody of the commonwealth pending forfeiture, subject only to the orders and decrees of the court having jurisdiction thereof. Process for seizure of such property shall issue only upon a showing of probable cause, and the application therefor and the issuance, execution, and return thereof shall be subject to the provisions of [G. L. c. 276], so far as applicable." General Laws c. 276, §§ 1-8, provides for search warrants.

[9]See 21 U.S.C. § 881(h) (1994) (providing that "[a]ll right, title, and interest in property [subject to forfeiture] shall vest in the United States upon commission of the act giving rise to forfeiture under this section").

[10]The Commonwealth in its brief supports its interpretation of the statute — that all owner's rights in property are extinguished on the property's seizure — by excerpting a passage from G. L. c. 94C, § 47 (*f*) (1) ("Property taken or detained under this section . . . once seized shall be deemed to be lawfully in the custody of the commonwealth pending forfeiture, subject only to the orders and decrees of the court having jurisdiction"). The passage is taken out of context and the omitted material undercuts the Commonwealth's interpretation.

*United States* v. *Salmon*, 944 F.2d 1106, 1122-1123 (3d Cir. 1991), cert. denied sub nom. *Washington* v. *United States*, 502 U.S. 1110 (1992):

> "[I]t may be that a person whose vehicle is seized pursuant to federal forfeiture law loses any legitimate expectation of privacy in the vehicle immediately upon its seizure . . . . However, we cannot say that a person whose car is seized pursuant to Pennsylvania's forfeiture statute loses all legitimate expectation of privacy immediately upon the vehicle's seizure. Pennsylvania's statutory scheme has no counterpart to 21 U.S.C. § 881(h). . . . Moreover, the statutory scheme suggests that transfer of title does not occur until after a court hearing is held. . . . Thus, a person whose vehicle is seized pursuant to Pennsylvania's forfeiture scheme retains some legitimate expectation of privacy in the vehicle's contents."

We observe a similar distinction between the government's broad rights arising from the Federal forfeiture statute and the more limited rights of the Commonwealth arising out of the Massachusetts forfeiture statute. We presume that in amending G. L. c. 94C, § 47,[11] the Legislature was aware of cognate provisions of the Federal forfeiture statute and how those provisions had been interpreted by Federal courts. *Commonwealth* v. *Fourteen Thousand Two Hundred Dollars*, 421 Mass. 1, 8 (1995). The Legislature chose not to include a measure similar to 21 U.S.C. § 881(h) for immediately vesting in the Commonwealth rights to property on seizure.

In light of the Massachusetts statute governing the forfeiture of property, the Commonwealth's argument that Velez lost all property rights and any expectation of privacy in the Buick at the time of its seizure on June 22, 1996, must fail. The statute requires more than expressions of police intention to seek forfeiture, whether communicated to an owner or to the district attorney, before the Commonwealth's possessory interest in Velez's vehicle may begin to displace her interests and, in turn,

---

[11]Since 1984, when 21 U.S.C. § 881(h) was enacted in the Comprehensive Forfeiture Act of 1984, Pub. L. 98-473, § 306(f) (1984), 98 Stat. 2051, the Legislature has amended our forfeiture statute five times without inserting a vesting provision similar to § 881(h). See St. 1996, c. 450, § 145; St. 1992, c. 289, §§ 6, 7; St. 1992, c. 133, §§ 455-459; St. 1991, c. 412, §§ 66A, 67; St. 1989, c. 653, §§ 73-80.

justify a warrantless search. With an expedited process by means of an ex parte proceeding having been included by the Legislature, the forfeiture statute did not overburden the police or the district attorney, if they had deemed it appropriate to proceed in that manner before conducting an investigative search of the Buick. Alternatively, they could have requested a search warrant for the Buick. In either case, the Commonwealth must show probable cause for an investigative search or for a forfeiture to a neutral magistrate, who may then issue either the proper search warrant or temporary orders relevant to forfeiture. See *Robbins* v. *California*, 453 U.S. 420, 423 (1981).

When it conducted the repeated investigative searches of the Buick, the Commonwealth had not even commenced a forfeiture proceeding, much less complied with minimum procedural requirements. It therefore may not claim in these circumstances that the July 12, 1996, search fell within an incident-to-forfeiture exception to the warrant requirement. Because we conclude on the facts of this case that the forfeiture statute does not authorize an incident-to-forfeiture exception to the warrant requirement from either the moment property subject to forfeiture is seized or the moment agents of the Commonwealth form the intent to seek forfeiture, we need not reach the defendants' constitutional argument that art. 14 of the Massachusetts Declaration of Rights protects against warrantless searches of property subject to forfeiture.

The judge's order allowing the defendants' motions to suppress evidence seized from the Buick on July 12, 1996, is affirmed.

*So ordered.*