## Commonwealth vs. William B. Eggleston.

Berkshire. December 4, 2008. - April 10, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Probable Cause. Search and Seizure,* Probable cause, Motor vehicle, Exigent circumstances, Warrant. *Constitutional Law,* Probable cause, Search and seizure. *Controlled Substances.*

This court concluded that when police officers stop an automobile in a public place with probable cause, art. 14 of the Massachusetts Declaration of Rights requires no more exigent circumstances beyond the inherent mobility of the automobile itself to justify a warrantless search of the vehicle, even where the police have ample opportunity to obtain a search warrant before the stop, provided that there has been no unreasonable delay between the time when the police objectively have probable cause to search the automobile and the time when they do so. [557-561] Cordy, J., concurring. Ireland, J., dissenting, with whom Marshall, C.J., joined.

Indictments found and returned in the Superior Court Department on January 21, 2005.

A pretrial motion to suppress evidence was heard by *Daniel A. Ford,* J., and the cases were heard by *John A. Agostini,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Wendy H. Sibbison* for the defendant.

*Karen L. Carlo,* Assistant District Attorney, for the Commonwealth.

Cowin, J. "[W]hen an automobile is stopped in a public place with probable cause, no more exigent circumstances are required by art. 14 [of the Massachusetts Declaration of Rights] beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle." *Commonwealth* v. *Motta,* 424 Mass. 117, 124 (1997). In this case, we conclude that this principle applies even when the police had ample opportunity to obtain a search warrant, provided that there has been no unreasonable delay.

*Facts and proceedings.* The essential facts are not disputed. Members of the Berkshire County drug task force (task force) received information from a number of confidential informants that an individual named "Bill," whose physical description matched that of the defendant, was selling "crack" cocaine from the parking lot of a tire store in North Adams. Confidential informants, who had purchased drugs from "Bill," also reported that the individual regularly sold crack cocaine from a car wash across the street from the tire store and sometimes drove to other locations to meet customers.

Based on the informants' statements, in December of 2004, the task force undertook an investigation of the defendant, who worked at the tire store. The investigation established that the defendant routinely sold drugs from the tire store parking lot or the neighboring car wash before work, during his lunch hour, and at the end of the work day. Confidential informants told police that the defendant usually had crack cocaine when he was at work, either on his person, in his car, or both. Other informants[1] provided specific details concerning two vehicles that the defendant used to conduct drug transactions. They also described the location in which the defendant hid cocaine and money in one of the vehicles. One informant, who had once observed the defendant with 112 grams of individually packaged crack cocaine, had purchased cocaine from the defendant on numerous occasions for several months prior to the investigation. Two informants stated that the defendant supplied named drug dealers with crack cocaine. One of these individuals, Joseph Pini, was known to the police as a drug dealer.

On January 5, 2005, an informant told members of the task force that the defendant was scheduled to receive a large shipment of crack cocaine sometime between 1 and 2 P.M. on January 6, 2005. On the same day, the investigators received information from an inmate at the Berkshire County house of correction that,

[1]Five confidential informants and two named informants supplied information to the task force. The defendant does not dispute that a number of these informants were well-known to the police, had provided reliable information in the past, and met the requirements for reliability necessary to comport with art. 14 of the Massachusetts Declaration of Rights. See, e.g., *Commonwealth v. Robinson*, 403 Mass. 163, 164-165 (1988) (two-prong test of veracity and basis of knowledge necessary to establish probable cause under art. 14).

on Friday, January 7, 2005, Pini intended to purchase a large quantity of crack cocaine from a dealer known as "Goodyear Bill," who sold crack cocaine during lunch breaks and after work at the tire store. The inmate again contacted investigators on the afternoon of January 7, 2005, and reported that Pini told him that he intended to make the purchase after 5 P.M., when the defendant left work.

At 4:15 P.M., police began surveillance of the tire store, intending to follow the defendant after he left work and to arrest both the defendant and Pini after they completed the transaction. However, State Police Sergeant David B. Foley, a supervisor on the task force, observed that, because of the time of day, traffic on the streets near the store was very heavy.[2] Foley became concerned that waiting to arrest the defendant and Pini, whom Foley described as a "nut," until after they completed the transaction would create a risk that Pini, and possibly the defendant, would attempt to flee, and could result in a dangerous high-speed chase of one or both vehicles. He decided to forgo observing Pini and instead waited to observe whether the defendant left the store at the predicted time. He instructed the officers present to prevent the defendant from leaving the parking lot; he also decided that it would be wiser to arrest the defendant after the defendant entered the vehicle, rather than risk a struggle in the open lot.

At approximately 4:20 P.M., the officers saw Pini drive past the tire store parking lot without stopping. A few minutes before 5 P.M., the defendant left the store, started his vehicle's engine, and then returned to the store. At 5 P.M., the defendant emerged from the store again. When he was seated in the driver's seat of his white sport utility vehicle, police officers knocked on the driver's side window and asked the defendant to turn off the engine. He refused to do so and attempted to put the vehicle in gear. After the police physically removed the defendant from the vehicle and took him into custody, they searched it. They found six plastic bags containing 379 grams of crack cocaine, two hydrocodone tablets, and over $2,000 in cash, including some counterfeit bills.

The defendant was indicted on charges of trafficking in cocaine,

---

[2]The tire store was located at the intersection of two major streets.

drug violations within a park zone, possession of hydrocodone, and possession of counterfeit bills. He moved to suppress all of the evidence seized from his vehicle, as well as statements he made at the police station after his arrest, on the ground that the warrantless search of the vehicle failed to satisfy any exception to the warrant requirement. This motion was denied. Following a jury-waived trial in the Superior Court, the defendant was convicted of the drug charges; the charge relative to the counterfeit bills was placed on file. The defendant then appealed from the judgments of conviction on the ground that his motion to suppress should have been allowed. The Appeals Court affirmed the convictions, *Commonwealth* v. *Eggleston*, 71 Mass. App. Ct. 363, 366-367 (2008), and we allowed the defendant's application for further review.

*Discussion.* We have said previously that a warrant is not required to search an automobile "when police have probable cause to believe that a motor vehicle on a public way contains contraband or evidence of a crime, and exigent circumstances make obtaining a warrant impracticable." *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990). The United States Supreme Court later eliminated any requirement that exigent circumstances exist beyond the automobile's "ready mobility," and held that, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment [to the United States Constitution] thus permits police to search the vehicle without more." See *Pennsylvania* v. *Labron*, 518 U.S. 938, 940 (1996). The Court noted "that an individual has a lesser expectation of privacy in an automobile" because of its extensive regulation. *Commonwealth* v. *Motta*, 424 Mass. 117, 123 (1997), citing *Pennsylvania* v. *Labron, supra*. We subsequently concluded that "when an automobile is stopped in a public place with probable cause, no more exigent circumstances are required by art. 14 beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle." *Id.* at 124. We adopted the mobility rule of the Supreme Court for substantially the reasons discussed by the Court, observing that while art. 14 at times provides more protection than the Fourth Amendment, we had followed the Supreme Court in the area of the automobile exception on other occasions, and no compelling reason had been advanced to cause

art. 14 and the Fourth Amendment to diverge in this area. See *id.* at 123-124.

Here, we are asked to consider whether, despite the inherent mobility rule, art. 14 requires the police to obtain a warrant before searching a vehicle when they have probable cause early enough to do so. The defendant does not challenge the inherent mobility rule; he contends, however, that once the police had probable cause, they delayed execution of the search here in a deliberate attempt to make use of the automobile exception in order to thwart the requirement of obtaining a warrant. The defendant argues that, in these circumstances, where the police had obtained evidence that provided a "plain and ample" opportunity to seek a search warrant prior to a search, art. 14 required them to do so despite the automobile exception. The defendant contends that here the decision to delay obtaining a warrant in order to gather additional evidence against the buyer was impermissible.[3]

The defendant does not dispute the evidence of probable cause in this case. To the contrary, he contends that, based on the inmate's statement, there was probable cause to arrest the defendant on the afternoon of January 6, 2005, as well as throughout the day on January 7, 2005. It is for this reason that the defendant argues that the police had adequate time to obtain a search warrant before the stop on January 7, 2005, and were required to do so. The defendant claims that, as Foley testified, the police intended to arrest him on January 7, 2005, regardless of whether he entered his vehicle, and that the exigent circumstances purportedly justifying relaxation of the warrant requirement were created by the police decision to forgo the opportunity to obtain a search warrant for the vehicle earlier in the day.

As we have indicated, ordinarily additional exigent circumstances are not required when the search is of an automobile. We agree, however, that the automobile exception may not be employed to justify an unreasonable delay between the time

---

[3]The defendant argued in his motion to suppress that the parking lot was not a public place; he did not pursue that argument before us, and we assume he has conceded the point. In addition, as the motion judge found, the public had access to the parking lot, see *Commonwealth* v. *Gajka*, 425 Mass. 751, 752 (1997) ("vehicle was parked in a public place and was apparently capable of being moved"), and this finding is warranted.

when the police objectively have probable cause to search the car and the time when they do so. *Commonwealth* v. *Motta, supra* at 125. Once probable cause was established, the warrantless search of the defendant's vehicle in the public parking lot was permissible; the question then becomes whether the police delayed execution of the search for an unreasonably long time without plausible justification for the delay. The time between an objective determination of probable cause and the conducting of the search of the automobile may be unreasonable, see *Commonwealth* v. *Agosto,* 428 Mass. 31, 34 (1998), if the police as an objective matter have no reasonable basis to expect that delay would produce any additional benefit. On the other hand, a reasonable period to further the investigation may be permissible to corroborate information received; because of an expectation that additional evidence will subsequently be located in the automobile; or in anticipation that the suspect or another will commit additional criminal acts. Once plain and ample opportunity to obtain a warrant is available, see *Commonwealth* v. *Cast, supra* at 904, quoting *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 351 (1983), the police are nevertheless entitled to forgo application for the warrant if it is reasonable to do so and later to proceed with the search under the automobile exception.

The concurring justice characterizes our analysis as "reanimat[ing]" the abandoned "plain and ample opportunity" test, see *Commonwealth* v. *Bongarzone,* 390 Mass. at 350-351 (suggesting but not deciding that such a requirement might exist), as part of a " 'reasonable basis' test." *Post* at 564. That proposition conflates two separate considerations and thus misses the point. We agree that the existence of a plain and ample opportunity to obtain a warrant does not *by itself* require the obtaining of a warrant where a "readily mobile" vehicle is involved. See *Pennsylvania* v. *Labron,* 518 U.S. 938, 940 (1996). Indeed, in these types of cases, there will always be a plain and ample opportunity because, if such an opportunity does not exist, there would be probable cause coupled with exigent circumstances, and reliance on the automobile exception would be unnecessary.

Thus, a requirement that there be a "reasonable basis" for delay in executing a seizure following the advent of probable cause does not replicate "plain and ample opportunity," because,

by definition, there will already have been a plain and ample opportunity to obtain a warrant. What "reasonable basis" analysis does is move to a second, and entirely separate, inquiry, i.e., whether a delay in executing a permissible seizure is motivated by reasonable investigative considerations or merely by a desire to avoid the warrant requirement by exploiting the automobile exception. Given the significance of the warrant requirement in our constitutional framework, we consider this slight restriction on the exception a logical one.[4]

In the circumstances here, the police decision to delay the search in order to obtain corroborating evidence and to obtain sufficient evidence to arrest a second suspect was not so unreasonably long as to render the search invalid, and the police had an objective, defensible reason to justify waiting. The police were acting on tips from an inmate not necessarily reliable; it was not unreasonable to wait to see if the defendant was about to enter into the predicted transaction. See *Commonwealth* v. *King*, 35 Mass. App. Ct. 221, 226 (1993) (police entitled to wait until "last piece of probable cause had fallen into place"). Additionally, by waiting to see if the sale occurred, the police would have an opportunity to arrest a second individual, already known to them as a major drug dealer.

The defendant's reliance on *Commonwealth* v. *Agosto*, *supra* at 34, is misplaced. In that case, the police seized a vehicle and held it for twenty-one days; they conducted several warrantless searches during that period before discovering heroin hidden in the vehicle. *Id.* at 32-33, 35. We concluded that the vehicle, because it was held in a police facility, was no longer mobile and that, therefore, the automobile exception did not apply. *Id.* at 34-35. We emphasized that, while broad, the automobile exception did not "giv[e] the police carte blanche to search without a warrant any time subsequent to a valid stop," and that an "unreasonable delay . . . will render invalid an otherwise valid

---

[4]The alarm expressed by the concurring justice that our demand that there be a reasonable investigative basis for delay will embroil judges in more litigation, *post* at 562, is curious and misplaced. Both the Fourth Amendment to the United States Constitution and art. 14 require that searches not be unreasonable, and we have for some time expected that it is judges who will make the ultimate decisions on such issues. See *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 176-177 (1803).

search." *Id.* at 34, quoting *Commonwealth* v. *Markou*, 391 Mass. 27, 30 (1984), and *Commonwealth* v. *Motta*, *supra* at 125. In contrast, the search in the present case was conducted within minutes of the stop, while the vehicle was in the public parking lot; thus, there was no unreasonable delay following the seizure that would have rendered the vehicle immobile and made the automobile exception inapplicable.

The defendant's reliance on *Commonwealth* v. *Sergienko*, 399 Mass. 291, 297 (1987), is also unavailing. In that case, we held that a delay of four and one-half hours between the observation of a marijuana cigarette in a defendant's car, parked in his employer's parking lot, and a warrantless search was unreasonable because the police had had sufficient time to obtain a warrant. In those circumstances, the delay was objectively unreasonable because it could not have enabled the police to corroborate information or obtain additional evidence: the marijuana cigarette was in plain view, and there was no indication that other suspects were involved or that further investigation would be fruitful.

Despite the defendant's assertion to the contrary, Foley's statements that he intended to arrest the defendant on the afternoon of January 7, 2005, regardless of whether the defendant entered his vehicle, and that he did not obtain a search warrant because he planned to rely on the automobile exception, do not invalidate the warrantless search. Foley also testified at the suppression hearing that he waited to see if the sale took place so that there would be sufficient evidence to arrest both men, and that an arrest of both men would have been preferable. If indeed these factors are present, delay is justified. However, a police officer's motives are not material, because the determination of probable cause is an objective one. See *Commonwealth* v. *Washington*, 449 Mass. 476, 485-486 (2007).

In the circumstances here, although the police had ample opportunity to obtain a search warrant, the delay in conducting the search was objectively reasonable. Thus, a warrantless search of the automobile parked in a public place was permissible.

*Judgments affirmed.*

CORDY, J. (concurring). I concur in the court's conclusion that

the warrantless search of the automobile in this case was permissible. And I agree that when the police objectively have probable cause to search an automobile stopped in a public place, the mere fact that they had opportunity in advance of the search to obtain a warrant does not require them to do so. That is, "no more exigent circumstances are required by art. 14 [of the Massachusetts Declaration of Rights] beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle." *Commonwealth* v. *Motta*, 424 Mass. 117, 124 (1997). However, I write in concurrence because I differ with the court's opinion insofar as it requires that any delay between the police objectively having probable cause and their execution of the search have a "reasonable basis" in the furtherance of the investigation. This requirement undercuts the Federal jurisprudence on the subject that we accepted as our own in *Commonwealth* v. *Motta, supra.* It also adds a wrinkle to the automobile exception that has been eliminated from the constitutional jurisprudence on which the automobile exception relies, and opens the door to unnecessary litigation over a new standard which will now apply to the timing of automobile searches occurring in the Commonwealth. The measuring of the reasonableness of investigative delay is not an area where the court has expertise, and will plainly involve judges in second-guessing the actions of investigators based on an unexplained standard.

The reasonable basis test adopted by the court appears to derive from the "plain and ample" opportunity language first mentioned by this court more than twenty-five years ago in *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 351 (1983). That language is drawn from *United States* v. *Newbourn*, 600 F.2d 452, 457 (4th Cir. 1979), and is rooted in the (now abandoned) requirement that the government demonstrate a particular exigency necessitating an immediate search of the vehicle. See *Chambers* v *Maroney*, 399 U.S. 42, 50-52 (1970) (automobile exception based on government's ability to demonstrate "fleeting" opportunity to search vehicle). Indeed, the United States Court of Appeals for the Fourth Circuit cited the *Chambers* decision when it propounded the concept of a "plain and ample" opportunity in *United States* v. *Newbourn, supra* ("If, under *Chambers*, an opportunity to obtain a search warrant prior to

the seizure of an automobile invalidates its search, the oppor-
tunity must be plain and ample").[1]

The "plain and ample" opportunity language is no longer
relevant to automobile search jurisprudence.[2] Since *Chambers*,
the United States Supreme Court has definitively (and repeat-
edly) held that the automobile exception applies even when
there is no exigency beyond the car's inherent mobility, that is,
even when there is a plain and ample opportunity to obtain a
warrant. In *United States* v. *Ross*, 456 U.S. 798, 809 (1982), the
Court held that a warrantless vehicle search is proper as long as
police officers have probable cause to search the vehicle, "even
though a warrant has not actually been obtained." The Court
later clarified that the automobile exception does not have a
separate exigency requirement, and that it applies as long as the
vehicle is "readily mobile" and officers have probable cause to
believe the vehicle contains contraband. *Pennsylvania* v. *La-
bron*, 518 U.S. 938, 940 (1996). Finally, the Court reiterated
that a finding of probable cause "alone satisfies the automobile
exception to the Fourth Amendment's warrant requirement,"
*Maryland* v. *Dyson*, 527 U.S. 465, 467 (1999) (per curiam), and
that "a separate finding of exigency in addition to a finding of
probable cause is squarely contrary to our holdings in *Ross* and
*Labron.*" *Id.*[3]

Following the Supreme Court, Federal Courts of Appeals have
uniformly concluded that in reviewing an automobile search,
there is no continuing need to analyze whether officers had an
opportunity to obtain a warrant. "[T]he agents' time and oppor-

---

[1]The dissenting justices continue to rely on this language, arguing that
police "*either* have exigent circumstances . . . justifying a warrantless search
. . . *or* . . . they must get a warrant if there is a plain and ample opportunity
to do so" (emphasis added). *Post* at 565-566.

[2]Since *United States* v. *Newbourn*, 600 F.2d 452, 457 (4th Cir. 1979), which
first used the phrase "plain and ample," only one jurisdiction outside of Mas-
sachusetts has ever applied this test: Indiana. *Murphy* v. *State*, 499 N.E.2d
1077, 1082 (Ind. 1986).

[3]In *Maryland* v. *Dyson*, 527 U.S. 465, 467 (1999), the United States Supreme
Court reversed a decision of the Maryland Court of Special Appeals that had
suppressed evidence seized in the warrantless search of an automobile because
there was sufficient time after the police received an informant's tip to obtain
a warrant, that is, because "there was no exigency that prevented or even
made it significantly difficult for the police to obtain a search warrant." See
*id.* at 466.

tunity to obtain a warrant are irrelevant, as constitutional analysis ends with finding probable cause." *United States* v. *Crabb*, 952 F.2d 1245, 1246 (10th Cir. 1992) (automobile exception applies although officers did not obtain search warrant for parked U-Haul rental truck during multiple-hour opportunity). See *United States* v. *Howard*, 489 F.3d 484, 495 (2d Cir. 2007) (automobile exception applies even though officers had up to sixteen hours to request warrant); *United States* v. *Watts*, 329 F.3d 1282, 1285-1286 (11th Cir. 2003) (no warrant required to search parked vehicle even though officers sought and received warrant to search adjacent house).

While it appears that no State or Federal jurisdiction continues to apply the "plain and ample" opportunity test to determine whether the police are required to get a search warrant, the court's opinion reanimates it in the form of a "reasonable basis" test.[4] Specifically, the court holds that if the automobile search occurs after a delay from the time the police obtain probable cause, the Commonwealth is required to demonstrate that "as an objective matter" the police had a "reasonable basis to expect that delay would produce an[] additional benefit." *Ante* at 559. If this cannot be shown, the failure to obtain a search warrant would be fatal to the search, presumably because without such a "reasonable basis," there would be a "plain and ample opportunity" for the police to get a warrant, and the automobile exception to the warrant requirement would not apply. No other court has suggested that such a test or limitation applies to the search of motor vehicles stopped in a public place,[5] and it is inconsistent with the

---

[4]In its opinion, the court responds that its "reasonable basis" test is completely different and separate from the now lifeless "plain and ample" opportunity rule. See *ante* at 559-560. I do not see the distinction. The test presumes the viability of the "plain and ample" rule. Almost any claim that the police had a plain and ample opportunity to obtain a search warrant (and therefore engaged in an unconstitutional warrantless search) is readily convertible into a claim that the police should have obtained a search warrant because they had no reasonable basis to expect an additional investigative benefit sufficient to justify the delay. That is, the police had a plain and ample opportunity to obtain a warrant because there was no reasonable basis on which to delay the search.

[5]One State, Maine, has analyzed officers' delay for "reasonableness." *State* v. *Patten*, 457 A.2d 806, 809 (Me. 1983). That case, however, was decided before the United States Supreme Court concluded that the automobile exception no longer rests solely on separate evidence of exigency. See *Maryland* v. *Dyson, supra* at 467; *Pennsylvania* v. *Labron*, 518 U.S. 938, 940 (1996).

Supreme Court jurisprudence we claim to follow. *Commonwealth* v. *Motta, supra* at 124 (we "have . . . followed the Supreme Court in the area of the automobile exception"; there is "no compelling reason why the automobile exception should come within th[e] special category where art. 14 and Fourth Amendment law diverge").

Moreover, the court's new "reasonable basis" test provides little guidance to officers in the field. How much of an additional benefit warrants what amount of delay? How certain does the additional benefit need to be? Police officers may not know the answer to these practical questions for years while the jurisprudence works itself out in the appellate courts. Such uncertainty is completely unjustified.

This is not to say that delays are never relevant in determining whether the search of an automobile is permissible. If a delay is too *lengthy*, the information relied on by the officers might become "stale and therefore insufficient to establish probable cause" to justify the search. *Commonwealth* v. *Matias*, 440 Mass. 787, 792 (2004). The "reasonable basis" test, on the other hand, implies that the automobile exception itself might no longer apply to readily mobile vehicles even if the officers still have probable cause to conduct a search. With this I disagree. Consequently, I concur only in the result that the court reaches today.

IRELAND, J. (dissenting, with whom Marshall, C.J., joins). In its decision today, the court essentially eliminates the requirement that police secure a warrant to search an automobile that is in a public place where, as here, they have a plain and ample opportunity to do so. *Ante* at 559. I write separately because I see the plain and ample opportunity principle as critical to preventing the automobile exception from swallowing the rule that warrants are required for searches. *Commonwealth* v. *Garden*, 451 Mass. 43, 47 (2008), quoting *Commonwealth* v. *Washington*, 449 Mass. 476, 480 (2007) (police search or seizure must be supported by valid warrant unless exigent circumstances make obtaining warrant impracticable).

Police either have exigent circumstances, related to the inher-

ent mobility of the automobile, justifying a warrantless search, *Commonwealth* v. *Motta*, 424 Mass. 117, 124 (1997), or they have a situation where, although an automobile is involved, they must get a warrant if there is a plain and ample opportunity to do so. Concerning the plain and ample opportunity issue, *Commonwealth* v. *Sergienko*, 399 Mass. 291, 296 (1987), a case that involved the warrantless search of a parked automobile, is instructive. In determining that the Commonwealth failed to demonstrate that the approximately four hours police had to obtain a warrant was insufficient time to do so, the court incorporated the principle, articulated in *Commonwealth* v. *Forde*, 367 Mass. 798, 803 (1975) (warrantless search of apartment improper), that, where there is an unreasonable delay in obtaining a warrant, police could not rely on exigent circumstances that subsequently arose to justify a warrantless search. *Commonwealth* v. *Sergienko, supra* at 297. The court stated, "Haste does not become necessary in the present sense if the need for it has been brought about by deliberate and unreasonable delay. This would allow the exception to swallow the principle." *Id.* at 296, quoting *Commonwealth* v. *Forde, supra* at 802. In *Commonwealth* v. *Cast*, 407 Mass. 891 (1990), the court reiterated that the opportunity to obtain a warrant to search an automobile must be "plain and ample." *Id.* at 904, quoting *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 351 (1983). See *Commonwealth* v. *Bakoian*, 412 Mass. 295, 304 (1992), quoting *Commonwealth* v. *Bongarzone, supra.*

Subsequent to these cases, this court decided *Commonwealth* v. *Motta, supra.* There, the court held that art. 14 of the Massachusetts Declaration of Rights does not offer more protection than the Fourth Amendment to the United States Constitution, where an automobile is stopped in a public place with probable cause. *Id.* at 124. The court stated that no more exigent circumstances are required to justify a warrantless search. *Id.* Relying on *Pennsylvania* v. *Labron*, 518 U.S. 938, 940 (1996), this court stated that the exigency existed because "the inherent mobility of automobiles creates an exigency that they, and the contraband there is probable cause to believe they contain, can quickly be moved away while a warrant is being sought." *Commonwealth* v. *Motta, supra* at 123, quoting *Commonwealth* v. *Cast, supra* at

904. Implicit in this reasoning is an assumption that if there *is* ample opportunity for a warrant to be sought to search a particular motor vehicle, there is no justification for the police to avoid obtaining a warrant.

This court seems to acknowledge, *ante* at 554, that its holding is an extension of the holding in the *Motta* case, which, despite its broad-brush strokes, did not eliminate the plain and ample opportunity principle. Eighteen months later, in *Commonwealth* v. *Agosto*, 428 Mass. 31 (1998), this court reiterated that principle, stating that "[i]n holding the vehicle for an indefinite time, the police also had a 'plain and ample' opportunity to obtain a warrant."[1] *Id.* at 34. The court carefully noted that there were no "sufficient reasons for the police not to have secured a warrant" before conducting their search. *Id.* at 35. Where the underlying exigency theory justifying a warrantless search does not apply, police may not forgo seeking a warrant when they have plain and ample opportunity to do so, as they clearly did in this case.

In *Commonwealth* v. *Motta, supra* at 123, the "inherent mobility" of the automobile, for which no search warrant had previously been obtained, presented as a real problem, fully justifying a claim of exigency. In that case, Brockton police had had one of the defendants, Emilio Serverino, under surveillance as a suspected heroin dealer, and an undercover police officer had made seven drug purchases from Serverino. *Id.* at 118. In anticipation of arresting Serverino, police obtained *five* search warrants, three for apartments in the building where Serverino resided and two for two different automobiles. *Id.* at 118-119. On the day Brockton police planned to arrest him, they learned from Federal drug enforcement agents that Serverino was en route from Lynn to a grocery store in Brockton where the agents previously had arranged to buy a large amount of heroin from him. *Id.* at 119. Serverino was in a different vehicle from the ones for which search warrants had been obtained. *Id.* It was in fact an automobile "heretofore unknown to the Brockton police." *Id.* As the police drove in the direction of the store, they saw the vehicle that the agents had identified. *Id.* When they saw that Serverino was the

[1] At oral argument, the Commonwealth acknowledged that "the plain and ample opportunity analysis still stands."

driver, the officers followed it for a short distance and then stopped it. *Id.* Clearly, there was no time to obtain a sixth warrant to search the automobile Serverino was driving at that time. The *Motta* court did not intimate in any respect that it had been unnecessary for the police to obtain, as they did, the warrants to search two cars they knew Serverino had used to conduct his illegal drug sales. It was his wholly unanticipated use of a third automobile that gave rise to the exigency justifying a warrantless search of that automobile.

Turning to the particulars of this case, unlike the motion judge, I conclude that the police had probable cause to obtain a search warrant to search the defendant's vehicle at the very latest the afternoon the drug transaction was to take place. There was a plain and ample opportunity to obtain a search warrant and they should have done so. Obtaining the warrant would not, in any way, have affected when they searched the vehicle. Nothing prevented the police from delaying their search until the transaction took place and arresting Joseph Pini at that time.

But, even if I agreed with the motion judge that the "last piece of probable cause" for that specific drug transaction did not fall into place until police officers saw Pini drive by, I nevertheless conclude that there is no need for the court to eviscerate our plain and ample opportunity jurisprudence. As the judge concluded, there was no "practical opportunity" for police to obtain a warrant because no more than forty-five minutes elapsed from the time police saw Pini drive by to when the defendant left work. Thus, the inherent mobility of the defendant's vehicle created the same exigent situation justifying a warrantless search as existed in the *Motta* case.

Under the rule the court articulates today, police officers will be on solid ground when they decide, as Sergeant Foley did, that they do not need a search warrant because they simply can rely on the automobile exception. I conclude that the court's holding allows the automobile exception to swallow the rule that warrants are required for a search, in violation of a defendant's rights under art. 14.

Accordingly, I respectfully dissent.