COMMONWEALTH vs. PETER MARKOU.

Berkshire.  October 5, 1983. — February 1, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Search and Seizure,* Automobile, Exigent circumstances.

A warrantless search of an automobile conducted at a police station some
two hours after police officers had stopped the automobile on a public
highway, arrested its driver, and impounded the automobile was law-
ful where probable cause and exigent circumstances justifying a war-
rantless search existed when the automobile was first stopped. [29-32]
There was no merit to a criminal defendant's contention that the term
"stolen stereo equipment" was insufficiently specific to justify a war-
rantless search of the defendant's automobile by police officers who
had been informed that the defendant had been seen placing stolen
stereo equipment in his automobile. [32-33]

COMPLAINT received and sworn to in the Northern Berk-
shire Division of the District Court Department on March
16, 1981.

In the jury session of the Central Berkshire Division, a
motion to suppress evidence was heard by *Dohoney,* J., and
the case was heard by *Donelan,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Michael D. Cutler* for the defendant.

*Robert J. Carnes,* Assistant District Attorney, for the
Commonwealth.

LYNCH, J.  After claiming a trial by jury in the first in-
stance, the defendant waived his right to a trial by jury and
was convicted in the Pittsfield District Court of receiving
stolen property.  He was given a two-year sentence, one
year to be served and one year suspended.  His motion to
suppress certain evidence which was discovered in the course
of a warrantless search of his automobile was denied.  His

motion for stay of execution of the sentence was also denied. This court granted his application for direct appellate review of the denial of his motion to suppress. Since we find no error in the denial of the motion to suppress, the judgment of the District Court is affirmed.

The facts are summarized from the findings of the motion judge and the transcript of the motion hearing. On March 13, 1981, shortly after 11:00 P.M., the clerk on duty at the Williamstown police department received a call from a Donald Menard, who reported that he had just witnessed the defendant, whom he knew and identified by name, placing "stereo equipment" that belonged to Menard and his roommate into a yellow Ford Mustang automobile. Menard then saw the defendant drive away. The clerk sent this information to the two police officers who were on cruiser patrol in separate cars. He described the automobile and the nature of the crime. He did not identify the defendant by name, but one of the officers asked "if it was our friend P.M." The clerk answered in the affirmative. This officer soon observed a yellow Mustang heading south on Route 7 in Williamstown. He stopped the automobile, and when he approached he recognized the driver as the defendant. The defendant agreed to follow the officer to the police station. At some point, however, he ceased to follow and drove off in another direction. The cruiser pursued the automobile, which was eventually stopped by the second police officer. When the first officer approached the automobile, he saw a cassette player in plain view on the rear floor. The cassette player had not been stolen, but the officer believed that it had been. He then lifted a piece of leather covering some items on the back seat and saw some stereo equipment which had been stolen. The officer then placed the defendant under arrest. His automobile was impounded and driven to the police station by the other officer. While at the police station, the officer telephoned the assistant clerk-magistrate of the District Court who set bail in the amount of $10,000.

At the police station between midnight and 12:30 A.M., a complete search of the vehicle was undertaken. The police

inventory describes a large number of items, including clothing, household items, and various pieces of stereo equipment.[1] The police had telephoned Menard; he was present at the search and identified the stereo equipment belonging to his roommate.

At no time did the police obtain a search warrant. At no time were any items of the stolen property visible outside of the automobile without removing the piece of leather covering them. At no time did the defendant consent to a search. The car was ultimately released to the defendant's brother without the permission of the defendant.

The defendant advances two arguments that the evidence seized during the warrantless search of his automobile should be suppressed. First, he argues that there were no exigent circumstances to justify a warrantless search once the automobile had been driven to the police station and the defendant was in custody. Alternatively, he argues that the police lacked probable cause to search because they lacked adequate particularity to identify the object of their search.

1. *Exigent circumstances.* The history of the "automobile exception" to the warrant requirement has been described at length in many other cases, and need not be repeated here.[2] Briefly, *Carroll* v. *United States,* 267 U.S. 132 (1925), held that a search warrant is not required where there is probable cause to search an automobile stopped on the highway: an immediate search is constitutionally permissible. In *Chambers* v. *Maroney,* 399 U.S. 42 (1970), the Court held that if probable cause to search and exigent circumstances existed when the car was first stopped, the warrantless search would be constitutionally permissible even if it were carried out at the police station. To date, "we have

---

[1] Although the police record was entitled "Custodial Inventory," the judge found that the search in this case was not a justifiable inventory search. An inventory search is invalid if done in the context of a criminal investigation. *Commonwealth* v. *Woodman,* 11 Mass. App. Ct. 965 (1981). It is clear that the primary objective of this search was the stolen stereo equipment.

[2] See, for example, *United States* v. *Ross,* 456 U.S. 798 (1982); *Commonwealth* v. *Rand,* 363 Mass. 554, 558-560 (1973).

adhered to the view expressed in *Chambers.*" *Commonwealth* v. *White,* 374 Mass. 132, 141 (1977). See also *Commonwealth* v. *King,* 389 Mass. 233 (1983). The defendant urges this court to reinterpret the Chambers rule to require exigent circumstances at the time of the *search,* not just at the time of the stop.[3]

The defendant's argument fails because it misinterprets the holding in *Chambers.* In *Carroll* v. *United States, supra,* the circumstances were exigent because the automobile could quickly be moved while a warrant was being sought. The Court in *Chambers* simply held that, given probable cause, and exigent circumstances such as in *Carroll,* either a warrantless search on the highway or removal to the police station and immediate search there is constitutionally permissible. Several recent cases have suggested that once the car is immobilized, *Chambers* no longer applies. See, for example, *People* v. *Rinaldo,* 80 Ill. App. 3d 433 (1980) (automobile impounded and under police control, warrantless search impermissible); *State* v. *Gagnon,* 207 N.W.2d 260 (N.D. 1973) (defendant in custody and car impounded, no exigent circumstances). This is the rule that the defendant would have us adopt. Those cases rely on the fact that once the automobile is in police custody, its mobility no longer presents a risk. As the Court recognized in *United States* v. *Ross,* 456 U.S. 798, 807 n.9 (1982), the holding in *Chambers* does not assume that exigent circumstances still exist at the police station. Instead it allows the police to conduct a search that could have been done at the scene of the stop in the safety of the police station. It reflects the reality of police work: in some circumstances it may be necessary to delay a search until it can be done in a safe, convenient, and risk-free place.

Decisions since *Chambers* demonstrate that that decision has not been interpreted as giving the police carte blanche to search without a warrant any time subsequent to a valid stop.[4]

---

[3] The defendant notes that this question was identified but was not decided in *Commonwealth* v. *Concepcion,* 10 Mass. App. Ct. 613, 617 (1980).

[4] See *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971). There the '
Court found no circumstances to justify the application of the *Carroll-*

The decisions that invalidate a warrantless search at a police station are not inconsistent with *Chambers*. In *State* v. *Quinn*, 290 Or. 383 (1981), for example, the court disallowed a search that took place twenty-two hours after the car was impounded. The delay was for the convenience of the police officer (who had gone off his shift shortly after the car was seized) and for the owner of the stolen property. However, the court said that a reasonably immediate search "would likely have been a valid warrantless search." *Id.* at 392. The court in *Quinn* also noted that "immediate" does not necessarily mean the police officer must search the car before the police officer does anything else. There should be reasonable leeway for the police to do the several things that need to be done at once when a suspect is brought to the police station.

We find that the circumstances in this case fall squarely within the Chambers automobile exception. The police officer clearly had probable cause to stop the defendant and to believe that stolen stereo equipment was in the car. He had received a detailed description of a distinctive car which he recognized as belonging to the defendant. The defendant's flight from the police reasonably increased the officer's suspicions that the defendant was involved in illegal activity. *Commonwealth* v. *Gilday*, 367 Mass. 474, 496 (1975).

The second requirement of *Chambers* is also met: there were exigent circumstances at the time of the stop. The stop was made at 11:30 P.M., after a chase on rural roads by the only two police cruisers available for use in Williamstown that night. This is just the sort of situation where the police should be able to move the automobile and the defendant to a location where the search may be conducted with more safety and with less interference with the other duties of the police officers.

---

*Chambers* rule, "no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile." *Id.* at 462.

At the police station, the search was consistent with the type of search contemplated in *Chambers* and found valid in subsequent cases. The search occurred no more than two hours after the stop. Although the person, Menard, who had reported the theft was present (at the request of the police) to identify the stolen stereo equipment, the search was part of the immediate postarrest process. There was no evidence that it was arranged for a time when it would be convenient for him to be present. The fact that the police talked with a magistrate to set bail does not mean that it was practical for them to obtain a warrant. Bail was set over the telephone. In order to get a warrant, one of the only two officers on duty that night would have had to prepare an application and affidavit and present them to the magistrate in person. G. L. c. 276, § 2B, as amended by St. 1965, c. 384. That would have left only one police officer on duty in Williamstown. Getting a warrant to search at the police station was no more practical than getting one to search on the highway. This search, therefore, falls squarely within the *Chambers* exception and, though it was made without a warrant, was constitutionally valid.

2. *Lack of particularity.* The defendant's second argument is that "stolen stereo equipment" is an insufficiently specific description to justify the officer's search. The defendant relies on several decisions which hold that the particularity requirements of the Fourth Amendment to the United States Constitution, art. 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, § 2, require more than a generic description of the items to be seized (except where the goods are contraband, intrinsically difficult to specify, or constitute a majority of the inventory to be searched). *Commonwealth* v. *Taylor,* 383 Mass. 272, 275 (1981) ("antique jewelry" insufficiently particular). See also *United States* v. *Tranquillo,* 330 F. Supp. 871, 873 (M.D. Fla. 1971) ("suits of clothing and shoes" insufficiently particular). Whether or not this court would consider "stolen stereo equipment" sufficiently particular if it were the description of the object of a search warrant is not the

question before us, because there was no warrant in this case.[5] The search of the defendant's automobile was based on probable cause to believe that it contained stolen stereo equipment, and was justified by the automobile exception to the search warrant requirement. *Chambers* v. *Maroney,* 399 U.S. 42 (1970). *Carroll* v. *United States,* 267 U.S. 132 (1925).

The defendant's motion to suppress was properly denied.

*Judgment affirmed.*

---

[5] One court found a similar description ("stereo tapes or players") impermissibly general for the purposes of a search warrant. *In re 1969 Plymouth Roadrunner, Black 2-door,* 455 S.W.2d 466 (Mo. 1970).