Commonwealth *v.* Motta.

COMMONWEALTH *vs.* LEON R. MOTTA
(and seven companion cases[1] ).

Plymouth. September 9, 1996. - January 15, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Probable Cause. Search and Seizure,* Probable cause, Automobile, Exigent
circumstances. *Constitutional Law,* Probable cause, Search and seizure.
*Practice, Criminal,* Findings by judge.

This court concluded that, when an automobile is stopped in a public place
with probable cause, no more exigent circumstances are required by art.
14 of the United States Constitution beyond the inherent mobility of an
automobile itself to justify a warrantless search of the vehicle. [122-124]
The record of a hearing on a motion to suppress evidence supported the
judge's finding that police had probable cause to stop a motor vehicle
and to search it for drugs [120-122], and the inherent mobility of the ve-
hicle provided a sufficient basis for a warrantless search [124-125]: the
defendants' motions to suppress should have been denied.

INDICTMENTS found and returned in the Superior Court
Department on May 10, 1994.

A pretrial motion to suppress evidence was heard by *Isaac
Borenstein,* J.

An application for leave to prosecute an interlocutory ap-
peal was allowed by *Fried,* J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by
him. The Supreme Judicial Court granted an application for
direct review.

*John E. Bradley,* Assistant District Attorney, for the Com-
monwealth.

*Jane Larmon White* for Emilio Serverino.

*Charles H. Robson* for Leon Motta.

LYNCH, J. On May 10, 1994, a Plymouth County grand
jury returned indictments against the defendants, Leon R.
Motta and Emilio Serverino, for trafficking in heroin. G. L.

[1]Seven indictments against Emilio Serverino.

c. 94C, § 32E (*c*).[2] The defendants moved to suppress the heroin, asserting that the warrantless search of the vehicle in which Serverino was the driver and Motta was the passenger was unlawful. The Commonwealth argued that the search was justified under the so-called "automobile exception" to the warrant requirement. The motion judge ruled that the police had probable cause to believe that the vehicle contained contraband, but that exigent circumstances were lacking and therefore a warrant was required prior to conducting the search.[3] The judge ordered the heroin suppressed, and the Commonwealth sought leave from a single justice of this court pursuant to Mass. R. Crim. P. 15 (b) (2),[4] 378 Mass. 882 (1979), to appeal this ruling. The single justice allowed the Commonwealth's motion and reported the case to the Appeals Court. We granted the Commonwealth's application for direct appellate review. For the reasons hereinafter set forth, we vacate the order of suppression and direct the entry of an order denying the defendants' motion to suppress.

The judge found the following facts.[5] Serverino was under police surveillance during the early part of 1994 because he was suspected of selling heroin in the Brockton area. Arthur McClaren, a Brockton undercover detective, purchased heroin from Serverino on seven different occasions between February 15, 1994, and March 1, 1994. On each occasion, Detective McClaren would buy heroin in increasing amounts after arranging by telephone to meet Serverino at various locations. McClaren testified that, at each meeting, Serverino would arrive in a gray 1983 Datsun automobile.

The Brockton police had planned in advance to arrest

[2]Serverino was also charged with distribution of a Class A substance in violation of G. L. c. 94C, § 32, and distribution of a class A substance in a drug free school zone in violation of G. L. c. 94C, § 32J.

[3]In his findings, the motion judge referred only to the Fourth Amendment to the United States Constitution. It is clear, however, that the judge concluded that the exigent circumstances requirement, while no longer part of the automobile exception under the Fourth Amendment, remained part of the automobile exception under art. 14 of the Massachusetts Declaration of Rights and excluded the heroin on that basis.

[4]Rule 15 (b) (2) of the Massachusetts Rules of Criminal Procedure has since been amended, effective March 1, 1996, as appearing in 422 Mass. 1501 (1996). Interlocutory appeals such as the one in this case are now brought pursuant to rule 15 (a) (2).

[5]Where the defendants argue that a particular finding is erroneous, we shall so indicate.

Serverino on March 4, 1994. In preparation for his arrest, Sergeant Kevin O'Connell of the Brockton police department obtained four separate search warrants, one for each of three apartments in the building where Serverino resided and one for his automobile, a gray 1983 Datsun. Later that day, the Brockton police also obtained a search warrant for another automobile.[6]

The Federal Drug Enforcement Agency (DEA), which was also investigating Serverino, planned to buy a large amount of heroin from Serverino on March 4.[7] That same day, a DEA agent notified Sergeant Mario Diliddo of the Brockton police force, as he was riding in an undercover vehicle with Sergeant O'Connell, that Serverino was en route from Lynn to Brockton and would be driving a gray Mercury Cougar, an automobile heretofore unknown to the Brockton police. O'Connell was told that the DEA had arranged a meeting with Serverino at a Purity Supreme market in Brockton.[8] Diliddo and O'Connell drove in the direction of the Purity Supreme and spotted Serverino driving a Mercury Cougar. They followed the vehicle at a distance of about one-quarter mile. They then instructed marked police units in the area to stop the vehicle and arrest Serverino.

The vehicle was pulled over at the intersection of East Ashland and North Carey Streets. Serverino was the driver of the vehicle and Motta was seated in the passenger seat. The two defendants were taken from the automobile, handcuffed, searched, and arrested. A small quantity of marihuana was found in plain view in a tape cassette holder between the two front bucket seats.

---

[6]Serverino asserts that there was no evidence that any search warrants were obtained prior to the arrest of the defendants and the search and seizure of the vehicle he was driving. A review of the record, however, leads us to conclude that the judge was warranted in finding that the search warrants were obtained prior to stopping the defendants. It is not true, as Serverino argues, that the Commonwealth has conceded that the evidence did not support the judge's finding that the four search warrants were obtained in preparation for (and therefore prior to) the arrest of the defendants.

[7]Serverino argues that, while there was evidence that the DEA agents had placed an order with him for heroin and had been instructed to meet him at the Purity Supreme, there was no evidence at the hearing that the DEA had arranged for the purchase of heroin from Serverino at the Purity Supreme.

[8]No DEA agent testified at the hearing.

The police did not search the automobile at the scene. O'Connell drove the automobile to the police station and parked it in a secured area. He arranged for the automobile to be "sniffed" by a "drug dog" for narcotics. The canine unit arrived within five to ten minutes, and as a result of the canine search, the police discovered a bag of heroin which was zipped into the back of the front passenger seat out of plain view.[9]

The Commonwealth argues, and the judge found, that there was probable cause to search the automobile. The Commonwealth also argues, however, that exigent circumstances should no longer be required to invoke the automobile exception and that, even if we conclude that an exigency requirement is still required, the judge erred in finding that there were no exigent circumstances justifying a warrantless search of the automobile. In short, the Commonwealth alleges that the search of the defendants' automobile did not violate the defendants' right to be free of unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.

1. *Probable cause.* Probable cause existed if police officers had enough knowledge "to warrant a person of reasonable caution in believing" the defendants were trafficking in heroin and the circumstances were such that this particular vehicle contained heroin. *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990), quoting *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). See *Carroll* v. *United States*, 267 U.S. 132, 161 (1925); *Commonwealth* v. *Wunder*, 407 Mass. 909, 912 (1990). "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Cast, supra,* quoting *Draper* v. *United*

---

[9]Because the city of Brockton had no written inventory policy, the Commonwealth did not argue that heroin, which was zipped into the back of the seat, created a bulge that was in plain view and properly examined pursuant to the inventory exception to the warrant requirement. In addition, the Commonwealth does not argue, nor do we consider, whether the search was lawful as incident to Serverino's valid arrest for previous alleged sales of heroin. In view of the fact that the search of the automobile was neither contemporaneous with the arrest nor for the purpose of protecting the safety of the officers, it is doubtful whether the search could be justified on that basis. *Commonwealth* v. *Alvarado*, 420 Mass. 542, 554 (1995).

*States,* 358 U.S. 307, 313 (1959). The judge found that Serverino had sold heroin to an undercover detective on seven prior occasions and that another such sale was arranged for March 4, 1994. The judge reasoned that "[t]he pre-arranged drug deal provided probable cause to believe that [Serverino was] on the way to the meeting and that there was heroin in the car. The police therefore had probable cause to stop the vehicle and to search it."[10]

Serverino argues that the testimony at best established that the Brockton police had ordered heroin but had not arranged a meeting time and location, and that the DEA agents had ordered heroin and had been instructed by unknown persons to meet him at the Purity Supreme, but that there was no evidence the transaction was to take place at that time. Thus, he argues that the judge's conclusion that there was probable cause based on his factual finding that there was a "pre-arranged drug deal" had no foundation in the evidence and was erroneous.

We accept a judge's findings of fact, in the absence of clear error, and grant substantial deference to the conclusions of law based thereon. *Commonwealth* v. *Bakoian,* 412 Mass. 295, 297-298 (1992). The judge found that the Brockton police, who in the past had purchased heroin from Serverino, ordered heroin from Serverino on March 4. Furthermore, the judge found that DEA agents had ordered heroin from Serverino and had arranged to meet him on March 4 at the Purity Supreme in Brockton. Finally, the judge found that the DEA had learned that Serverino had left Lynn and was en route to Brockton. The judge concluded that, "[g]iven the prior seven drug deals to McClaren and the sale arranged for March 4, 1994," there was sufficient probable cause to search the automobile. We agree.

---

[10]The judge noted in a footnote that marihuana found on the console, which may also have provided probable cause to search the vehicle, was found after the stop and arrest of the defendants. This discovery would appear to provide an independent basis to justify the search of the defendants' vehicle. See *Commonwealth* v. *Allain,* 36 Mass. App. Ct. 595, 602 (1994), rev'd on other grounds sub nom. *Commonwealth* v. *Cormier,* 41 Mass. App. Ct. 76 (1996); *Commonwealth* v. *Skea,* 18 Mass. App. Ct. 685, 690 n.8 (1984). Cf. *Commonwealth* v. *White,* 374 Mass. 132, 140 (1977), aff'd by an equally divided Court, 439 U.S. 280 (1978). We do not, however, rely on it because it was not the basis of the judge's decision nor was the issue extensively briefed by the Commonwealth.

Although the judge may have misinterpreted the testimony of O'Connell that the DEA had arranged a meeting to purchase heroin from Serverino,[11] this misinterpretation was not crucial to his finding of probable cause.

The officers knew of the seven prior drug sales, that a request for an additional purchase had been made, and that Serverino was traveling by automobile from Lynn to Brockton after talking with DEA agents about another purchase. Furthermore, when the police first saw Serverino in Brockton, he was in the vicinity of the Purity Supreme where the police were told the rendezvous would take place. In addition, based on O'Connell's and McClaren's testimony, the judge reasonably inferred that a prearranged drug deal was to take place. See *Commonwealth* v. *Santaliz,* 413 Mass. 238, 241 (1992). Based on such an inference and the prior drug sales, it is reasonable to conclude, as the judge did, that the requisite probable cause existed. We conclude that the judge was warranted in finding that the police officers had probable cause to search the automobile.

2. *Exigency.* As the automobile exception to the warrant requirement of the Fourth Amendment and art. 14 was originally formulated, a search warrant was not required "when police have probable cause to believe that a motor vehicle on a public way contains contraband or evidence of a crime and exigent circumstances make obtaining a warrant impracticable." *Commonwealth* v. *Cast,* 407 Mass. 891, 901 (1990). See *Carroll* v. *United States,* 267 U.S. 132, 153-154 (1925). The United States Supreme Court has eliminated the requirement of exigent circumstances to justify the warrantless search of a motor vehicle stopped in transit or seized or searched in a public place. *Pennsylvania* v. *Labron,* 116 S. Ct. 2485, 2487 (1996). The Commonwealth urges us to abandon our similar rule in construing art. 14.

In eliminating the requirement of exigent circumstances

---

[11]O'Connell testified that the DEA had telephoned the Brockton police "to give us warning that they had just been instructed to meet Serverino . . . at the Purity Supreme Market at East Ashland and North Carey Street in Brockton."

McClaren testified that "the DEA can tell you exactly when they made their phone call but they also ordered up a large amount of heroin. The DEA knew that . . . Serverino, was in Lynn at the time. . . . [A]nd he said . . . 'They're going to meet us at Purity Supreme in about five minutes.' "

from the automobile exception, the Supreme Court has emphasized both that the inherent mobility of an automobile in and of itself constitutes a sufficient exigency and that an individual has a lesser expectation of privacy in an automobile. *Id.* We too have recognized that the "inherent mobility of an automobile can supply the exigency required to justify a warrantless search and seizure on probable cause." *Commonwealth* v. *A Juvenile (No. 2)*, 411 Mass. 157, 163 (1991). See *Commonwealth* v. *Cast, supra* at 904; *Commonwealth* v. *Cavanaugh*, 366 Mass. 277, 282 (1974). Thus, we have long recognized that "less stringent warrant requirements have been applied to vehicles." *Commonwealth* v. *Cavanaugh, supra.* See *Commonwealth* v. *Cast, supra*; *Commonwealth* v. *Ortiz*, 376 Mass. 349, 357 (1978). This is so "because the inherent mobility of automobiles creates an exigency that they, and the contraband there is probable cause to believe they contain, can quickly be moved away while a warrant is being sought." *Commonwealth* v. *Cast, supra.*

In addition to recognizing that the inherent mobility of an automobile is a sufficient exigency to justify a warrantless search of an automobile in transit or in a public place, we have also noted that "[m]otor vehicles registered in this Commonwealth are subject to extensive regulation and inspection. . . . Such requirements tend to reduce a vehicle owner's reasonable expectation of privacy" in a vehicle. (Citations omitted.) *Commonwealth* v. *Mamacos*, 409 Mass. 635, 640 (1991). See *Commonwealth* v. *A Juvenile (No. 2), supra* at 165, quoting *Commonwealth* v. *Hall*, 366 Mass. 790, 803-804 n.17 (1975) ("[t]he leeway now allowed the police to conduct immediate searches of automobiles in lieu of holding them pending a warrant . . . is based on Supreme Court cases emphasizing the special nature of automobiles and the lesser expectation of privacy one may have with respect to them"); *Commonwealth* v. *Cavanaugh, supra* at 282.

Given that we have recognized that the inherent mobility of an automobile is an exigency that can justify a warrantless search especially in view of the vehicle owner's lesser expectation of privacy, it is difficult to perceive what more is needed. See *Commonwealth* v. *King*, 35 Mass. App. Ct. 221, 226 (1993) ("whether 'exigent circumstances' is or is not recited — justification for holding a warrant to be superfluous is found in the mobility of automobiles and the diminished feel-

ing of privacy people have regarding the interiors of their cars"). Indeed, while it is true that we have at times concluded that art. 14 provides more protection than the Fourth Amendment, we have also followed the Supreme Court in the area of the automobile exception. See *Commonwealth* v. *Cast, supra* at 901-902 (following Supreme Court's decision in *United States* v. *Ross,* 456 U.S. 798 [1982], holding that lawful warrantless search of motor vehicle extends to all containers, open or closed, found within); *Commonwealth* v. *Markou,* 391 Mass. 27, 29-30 (1984) (following Supreme Court's decision in *Chambers* v. *Maroney,* 399 U.S. 42 [1970], upholding warrantless search of automobile conducted at police station following seizure of automobile); *Commonwealth* v. *Ortiz, supra* at 355, 357 n.7 (following *Carroll* v. *United States,* 267 U.S. 132, 153 [1925], upholding warrantless search of automobile where automobile was readily mobile). Moreover, Serverino has advanced no compelling reason why the automobile exception should "come within this special category where art. 14 and Fourth Amendment law diverge." *Commonwealth* v. *Cast, supra* at 907.

We therefore conclude that, when an automobile is stopped in a public place with probable cause, no more exigent circumstances are required by art. 14 beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle.

Nor does the concept of inherent mobility of an automobile as a justification for the search change because the vehicle is moved to a secure location. We have consistently held that the determination of exigency must be made with reference to the time of the stop. See *Commonwealth* v. *Markou, supra* at 29-30; *Commonwealth* v. *Rand,* 363 Mass. 554, 559 (1973). Thus, "given probable cause, and exigent circumstances . . . either a warrantless search on the highway or removal to the police station and immediate search there is constitutionally permissible." *Commonwealth* v. *Markou, supra* at 30. See *Commonwealth* v. *Lara,* 39 Mass. App. Ct. 546, 548 (1995) ("if a search is constitutionally permissible on the street, with attendant risks [attempts to interfere with search, exposure to traffic] and awkwardness [tools not at hand, obstruction of traffic], the occupants of the car are no worse off [i.e., suffer no greater intrusion] if the search is continued in the secure setting of the police station").

Here the judge's findings demonstrated that the automobile

was seized at the intersection of two public streets in Brockton in the early afternoon in the vicinity of a well-known supermarket. It is beyond challenge that a vehicle impeding traffic or threatening public safety and convenience may be removed from the street. *Commonwealth* v. *Mamacos,* 409 Mass. 635, 639 (1991), citing *South Dakota* v. *Opperman,* 428 U.S. 364, 368-369 (1976). We conclude that this is "just the sort of situation where the police should be able to move the automobile and the defendant to a location where the search may be conducted with more safety." *Commonwealth* v. *Markou, supra* at 31. In short the police could not have been expected to leave an automobile they had probable cause to believe contained heroin at the intersection of two public roads, nor were they required to guard the vehicle until a warrant could be obtained. *Commonwealth* v. *Bakoian,* 412 Mass. 295, 304 (1992). While we have indicated our approval of the proposition that an unreasonable delay at the police station will render invalid an otherwise valid search, here there was no such delay. See *Commonwealth* v. *Markou, supra* at 30-31. The police officer testified and the judge found that, after driving the automobile to a secured area, O'Connell called the canine officer. The canine unit arrived within five to ten minutes and the automobile was searched. Merely because the police officer testified that he could have obtained a warrant does not mean that he was obligated to do so. "[T]hat such a step might have been feasible or even preferable in the long run, does not of itself condemn the reasonable procedure that was in fact followed." *Commonwealth* v. *Young,* 382 Mass. 448, 460 (1981).

Because we conclude that the existence of probable cause and the inherent mobility of the defendants' vehicle provided a sufficient basis for the warrantless search in the circumstances of this case, the motions to suppress should have been denied.

*So ordered.*