GAZIANO, J.
**211 On an afternoon in July 2015, a State police officer stopped the defendant for speeding and driving erratically on the Massachusetts Turnpike. After the traffic stop, the officer arrested the defendant for operating a motor vehicle while under the *560 influence of marijuana, G. L. c. 90, § 24 (1) (a ) (1). Subsequently, police officers searched the defendant's automobile and found bags of marijuana, a firearm, and ammunition in the trunk, and oxycodone and cocaine in the locked glove compartment.[1]
The defendant moved to suppress the evidence seized from his automobile. A Boston Municipal Court judge conducted an evidentiary hearing and thereafter denied the motion to suppress; she found that the police had probable cause to arrest the defendant for operating a motor vehicle while under the influence of marijuana, and that the search of the vehicle was justified as an inventory search. A jury acquitted the defendant of all charges except unlawful possession of the drugs found within the locked glove compartment. The defendant appealed to the Appeals Court, and we transferred the case to this court on our own motion.
On appeal, the defendant argues that police did not have probable cause to arrest him for operating a motor vehicle while **212 under the influence of marijuana, the search of his automobile was not a lawful inventory search or justified by any other recognized exception to the warrant requirement, and his trial counsel was ineffective for conceding that the defendant possessed the drugs found in the glove compartment.
We conclude that there was no error in the denial of the defendant's motion to suppress, and that the defendant was not deprived of the effective assistance of counsel.
1. Background. We summarize the facts as found by the motion judge, supplemented where appropriate with uncontroverted evidence from the suppression hearing that is not contrary to the judge's findings and rulings. See Commonwealth v. Melo, 472 Mass. 278, 286, 34 N.E.3d 289 (2015). We reserve for later discussion certain facts relevant to specific claims.
On July 28, 2015, at 12:40 P.M. , Major Daniel Risteen was driving eastbound on the Massachusetts Turnpike in an unmarked Ford Taurus cruiser. The defendant, driving a gray Infiniti sedan, sped past Risteen. Risteen observed the defendant drive at speeds between seventy and eighty miles per hour, and follow "dangerously close" to two other vehicles. The defendant failed to slow down at the toll booths at Exit 18, to Brighton or Cambridge; he was driving seventy miles per hour in a zone with a posted speed limit of thirty miles per hour. Using his public address system, Risteen stopped the vehicle immediately after it had passed through the toll booths, approximately fifty or sixty feet after the booths. The defendant, who had been driving in the left hand *561 lane, stopped on the left hand side of the egress from the toll booths.
In addition to the driver, the vehicle was occupied by two passengers. Risteen approached the driver's side door and asked the defendant for his license and registration. He detected a strong odor of burnt marijuana and an odor of fresh marijuana coming from within the vehicle. The defendant also smelled of burnt marijuana. Apologizing for "moving pretty fast," the defendant explained that he and his two friends were traveling from New York, and that one of them had to be in Somerville by 1 P.M.
During this initial interaction, Risteen noticed that the defendant's eyes were "red," "glassy," and "droopy," and that he was "fighting with the eyebrows, trying to keep his eyes open." He had "dry spit" on the sides of his mouth, his tongue was dry, he was "licking his lips" in responding to questions, and "his speech was slow and lethargic." Suspecting that the defendant was **213 impaired, Risteen returned to his vehicle and called for assistance. Trooper Michael Lynch responded to the scene in a marked police cruiser. When Risteen returned to the Infiniti, the defendant admitted to smoking marijuana "a couple of hours ago."
Risteen noted that both passengers also appeared to have smoked marijuana and thought they "looked high." They smelled of marijuana, and they had trouble staying awake during the roadside encounter. The judge found, as Risteen testified, that the passengers' eyes were red and they appeared "sleepy." They were closing their eyes and tilting their heads back as Risteen was talking to them. The passengers both said that they had been smoking marijuana "earlier" that day.
Risteen ordered the defendant to get out of his automobile so that Risteen could "check out" his condition to drive. Based on the officer's testimony, the motion judge found that the defendant exhibited a number of signs of impairment; "his coordination was slow, his head was bowing down, he had a hard time focusing -- [the officer] asked him four times to take his hands out of his pockets, [and] he was not able to follow simple instructions." Risteen decided to arrest the defendant, but believed that it would be "prefer[able]" to have a third officer present, so the officers would not be outnumbered, and called for additional backup.[2] Once a third officer arrived, Risteen placed the defendant under arrest for operating a motor vehicle while under the influence of marijuana.
After he was arrested and placed in the police cruiser, the defendant asked that one of his passengers be permitted to drive his vehicle. It was Risteen's opinion that "neither one of them could drive, they were both high." Because the officer believed the passengers were impaired and not capable of driving, he did not accede to the defendant's request that one of the passengers be allowed to drive his Infiniti. Rather, the officers impounded the vehicle and called a tow truck to remove it from the turnpike. Risteen told the two passengers to get out of the vehicle, and allowed them to retrieve their personal belongings -- shoes, other clothing, and backpacks -- from it, by indicating which items were theirs. He told them that they were not under arrest and could **214 leave with the tow truck driver. When one of the passengers *562 said that his backpack was in the trunk, Risteen removed it from the trunk, "pat frisked" it for weapons, and then handed it to the passenger.
Prior to the tow, Lynch "started the inventory" of the automobile by searching the trunk. There, he found a loaded handgun, ammunition, and three bags of marijuana sealed inside a plastic food container with a tight-fitting lid. At that point, the defendant already had been arrested, handcuffed, and placed in a police cruiser. Risteen decided to conduct a further search of the automobile at the State police barracks, because the sedan was stopped in a "precarious spot" that was causing traffic to back up at the tolls.
The tow truck delivered the defendant's vehicle to the State police barracks at 1:50 P.M. At some point after the defendant's arrest (it is unclear precisely when), Risteen requested the assistance of a canine "to put a drug dog on the vehicle." The canine handler, Trooper Edward Blackwell, met Risteen and Lynch at the State police barracks and started his search of the vehicle at 2 P.M. The canine sniffed around the outside of the vehicle and eventually alerted to the glove compartment. After attempting to open it, Lynch and Blackwell realized that the glove compartment was locked, and notified Risteen. Risteen obtained the key, which had been in the defendant's pocket, from the booking officer. Blackwell then used the key to open the glove compartment, where he found eleven oxycodone pills and two plastic bags containing a white powder later determined to be cocaine. The officers also found in the trunk a box for the firearm, which contained a gun lock and ammunition.
2. Discussion. a. Probable cause to arrest. A warrantless arrest is lawful under the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights if supported by probable cause. Commonwealth v. Santaliz, 413 Mass. 238, 240, 596 N.E.2d 337 (1992). "[P]robable cause exists, where at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense" (citation omitted). Id. at 241, 596 N.E.2d 337. A determination whether probable cause exists concerns the probability that an offense has been committed. See Commonwealth v. Cartright, 478 Mass. 273, 283, 84 N.E.3d 851 (2017), and cases cited. "These [determinations] are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men [and women **215 ], not legal technicians, act" (citation omitted). Commonwealth v. Hason, 387 Mass. 169, 174, 439 N.E.2d 251 (1982). Under this standard, police are not required to resolve all of their doubts before making an arrest. See Cartright, supra.
In this case, the motion judge found that Risteen was justified in arresting the defendant for operating a motor vehicle while under the influence of marijuana, based upon the officer's observations of the defendant's demeanor, physical appearance, and behavior. The judge determined also that the warrantless search of the defendant's vehicle was permissible under the inventory search exception to the warrant requirement.
The defendant contends that the judge erred in denying his motion to suppress, because the officers at the scene did not have probable cause to arrest him for operating a motor vehicle while under the influence of marijuana and, as a result, all of the evidence gathered after the unlawful arrest must be suppressed. In the defendant's view, the facts known at the time of his arrest gave rise only to a suspicion that *563 he had consumed marijuana sometime prior to the traffic stop, and, absent evidence of impairment, there was no crime, just the civil infractions of speeding and tailgating. See Commonwealth v. Rodriguez, 472 Mass. 767, 769-770, 37 N.E.3d 611 (2015) (odor of burnt marijuana, standing alone, does not create probable cause or even reasonable suspicion of criminal activity); Commonwealth v. Craan, 469 Mass. 24, 32, 13 N.E.3d 569 (2014) (odor of unburnt marijuana emanating from vehicle did not give rise to probable cause to arrest absent evidence that driver was impaired).
We agree with the motion judge that, based upon evidence that the defendant's consumption of marijuana had impaired his ability to drive safely, the officers were justified in arresting the defendant for operating a motor vehicle while impaired.
"While using marijuana is no longer a crime in Massachusetts," operating a motor vehicle while under the influence of marijuana remains a criminal offense.[3] Commonwealth v. Gerhardt, 477 Mass. 775, 780, 81 N.E.3d 751 (2017). General Laws c. 90, § 24 (1) (a ) (1), prohibits an individual from operating a motor vehicle on a public way "while under the influence of intoxicating liquor, or of marijuana, narcotic drugs, depressants or stimulant substances." We interpret this statute " 'in light of the legislative purpose to protect **216 the public from drivers whose judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies are diminished because of the consumption of alcohol' or drugs." Commonwealth v. Daniel, 464 Mass. 746, 756, 985 N.E.2d 843 (2013), quoting Commonwealth v. Connolly, 394 Mass. 169, 172-173, 474 N.E.2d 1106 (1985). A driver operates a motor vehicle while under the influence when the consumption of an intoxicating substance such as alcohol or marijuana diminishes his or her "ability to operate a motor vehicle safely." See Connolly, supra at 173, 474 N.E.2d 1106. The offense requires impairment of the ability to drive, as opposed to proof that the driver is "drunk" or "high." See Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 321, 640 N.E.2d 481 (1994).
We acknowledge that it is often difficult to detect marijuana impairment, because the effects of marijuana consumption "vary greatly amongst individuals," Gerhardt, 477 Mass. at 780-783, 786, 81 N.E.3d 751, and as yet there are no validated field sobriety tests.[4] Id. at 786, 81 N.E.3d 751. Nonetheless, as we noted in Gerhardt, certain indicia of marijuana impairment may be relevant to such an inquiry. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 782-783, 81 N.E.3d 751. "A police officer makes numerous relevant observations in the course of an encounter with a possibly impaired driver. There is no doubt that an officer may testify to his or her observations of, for example, any erratic driving or moving violations that led to the initial stop; the driver's appearance and demeanor; the odor of fresh or burnt marijuana; and the driver's behavior on getting out of the vehicle." Id. See Daniel, 464 Mass. at 756, 985 N.E.2d 843 (no probable cause to arrest for operating motor vehicle while under influence of marijuana where no evidence that defendant's "eyes were red or glassy, that her speech or movements were unusual, or that her responses to questioning were inappropriate or uncooperative").
The defendant's argument rests largely on the officer's testimony at the hearing on the motion to suppress that, while he observed the defendant speeding, at times *564 driving at speeds of eighty miles per hour, and driving dangerously close to the bumpers of two other vehicles, he did not observe the defendant swerving over marked lines, driving erratically, or appearing not to be in control of the vehicle. Indeed, the officer testified that, before he reached the driver's side door, he had been considering a number of reasons why the operator would have been driving in that manner, only one of which involved driving while intoxicated. Nonetheless, upon **217 approaching the driver's side door of the Infiniti, Risteen detected the odor of burnt and unburnt marijuana emanating from the vehicle, and the odor of burnt marijuana coming from the defendant's person. Among other things, the defendant had red and glassy eyes, he was struggling to keep his eyes open and his head upright, "his coordination was slow," he had difficulty "focusing," and he also had difficulty in following the officer's "simple directions." The defendant told the officer that he had smoked marijuana earlier that day, before he left to drive to Somerville. Given this, the judge was warranted in finding that police had probable cause to believe that the defendant had operated a motor vehicle while impaired. Contrast Daniel, 464 Mass. at 756-757, 985 N.E.2d 843, citing Connolly, 394 Mass. at 172-173, 474 N.E.2d 1106 (no reasonable suspicion of impairment where there was no testimony that defendant's "judgment, alertness, and ability to respond promptly and effectively to unexpected emergencies [were] diminished' by the consumption of marijuana"). Thus, the denial of the defendant's motion to suppress on this basis was proper. We turn to the search of the defendant's vehicle after his arrest.
b. Warrantless search of the automobile. A warrantless search is "per se" unreasonable under the Fourth Amendment. See Commonwealth v. Perkins, 465 Mass. 600, 603, 989 N.E.2d 854 (2013), quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). For evidence seized without a warrant to be admissible, the Commonwealth bears the burden to establish that a warrantless search fell within an exception to the warrant requirement. Perkins, supra. See Commonwealth v. Oliveira, 474 Mass. 10, 13, 47 N.E.3d 395 (2016) ; Commonwealth v. Johnson, 461 Mass. 44, 48, 958 N.E.2d 25 (2011).
The motion judge determined that the officers were authorized to conduct the search of the defendant's vehicle as an inventory search pursuant to the State police inventory search policy. She found that the officers adhered to the written inventory policy, and that the impoundment of the vehicle and its subsequent search were justified because "the vehicle was located on the side of the road after the toll booth and both passengers appeared to be under the influence of drugs and not able to drive."
On appeal, as he did at the hearing on the motion to suppress, the defendant challenges the search of his vehicle at the State police barracks on two grounds. First, he asserts that the judge erred in finding that both passengers were unable to drive the vehicle safely from the turnpike toll booth. See Commonwealth v. Caceres, 413 Mass. 749, 751, 604 N.E.2d 677 (1992) (police required to consider **218 practical alternatives to impoundment of vehicle and subsequent inventory search). Second, the defendant argues that the inventory search was a pretext for an investigatory search. See Commonwealth v. Alvarado, 420 Mass. 542, 553, 651 N.E.2d 824 (1995) (purpose of inventory search is not, and may not be, investigatory in nature).
An inventory search serves three separate legitimate purposes, none *565 of which is investigatory. See Commonwealth v. Eddington, 459 Mass. 102, 108-109, 944 N.E.2d 153 (2011). Police may impound and search a vehicle in order to protect the vehicle and its contents from the threat of theft or vandalism; to protect the police and the tow company from false claims; and to protect the public from dangerous items that might have been left in a vehicle. See Commonwealth v. Ehiabhi, 478 Mass. 154, 165, 84 N.E.3d 13 (2017). To justify this type of warrantless search, the Commonwealth bears the burden of establishing, first, that the impoundment was reasonable under the circumstances, and, second, that police conducted the inventory search in accordance with established written procedures. Oliveira, 474 Mass. at 13, 47 N.E.3d 395. See Alvarado, 420 Mass. at 552, 651 N.E.2d 824, quoting Colorado v. Bertine, 479 U.S. 367, 376, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (Blackmun, J., concurring) ("Law enforcement officers do not have discretion regarding what or where to search during an inventory search"). See also Ehiabhi, supra at 164-165, 84 N.E.3d 13. In examining the propriety of an impoundment, we also consider whether a police officer's decision to tow the vehicle "conceal[s] an investigative motive." Id. at 164, 84 N.E.3d 13. "Where the police's true purpose for searching the vehicle is investigative, the seizure of the vehicle may not be justified as a precursor to an inventory search, and must instead be justified as an investigative search." Oliveira, supra at 14, 47 N.E.3d 395.
The motion judge concluded, and we agree, that the police had reasonable grounds to impound the defendant's automobile. See Commonwealth v. Hoose, 467 Mass. 395, 399-400, 5 N.E.3d 843 (2014) (court defers to motion judge's subsidiary findings of fact absent clear error). The judge found that the vehicle, which was stopped on the left hand side of a toll exit on the Massachusetts Turnpike, in the middle of the day, partially impeding exit from the toll booth and causing traffic delays, posed a public safety hazard. See Oliveira, 474 Mass. at 14, 47 N.E.3d 395. The judge also determined that the police were justified in rejecting the defendant's request that one of his passengers be permitted to remove the vehicle from the highway. She credited Risteen's testimony and found that "both passengers appeared to be under the influence of drugs and not able to drive."
**219 The officers' testimony at the hearing, which the judge credited, supports a reasonable conclusion that the passengers were "not able to drive." The passengers told the officers that they had been smoking marijuana "all day," were in a vehicle that smelled of burnt marijuana, and had difficulty in staying awake during the traffic stop. A determination that the passengers were not in a condition to operate the vehicle safely is fact-driven, "with the overriding concern being the guiding touchstone of '[r]easonableness' " (citation omitted). See Eddington, 459 Mass. at 108, 944 N.E.2d 153. It was reasonable for the officers to conclude that turning the vehicle over to another impaired driver could compromise public safety. See Ehiabhi, 478 Mass. at 165, 84 N.E.3d 13.
That the officers had reasonable grounds to impound the vehicle, however, does not end the analysis. Based on Risteen's decision to "put a drug dog on the vehicle," the defendant argues that the inventory search of his automobile was a pretext to search the vehicle for investigative purpose, and that the judge erred in determining that it was a valid inventory search. See Oliveira, 474 Mass. at 13, 47 N.E.3d 395.
Unlike other types of searches, an inventory search is administrative, and the decision to conduct an inventory search *566 must not be for investigatory purposes; the decision must be objectively reasonable, and the search must be conducted according to standard written procedures. See Commonwealth v. Matchett, 386 Mass. 492, 509-510, 436 N.E.2d 400 (1982) (to be permissible, inventory search must be conducted following established written procedures and there must be "no suggestion that the procedure was a pretext concealing an investigatory police motive"). The use of a drug detection dog to conduct what is supposedly a search to safeguard property -- and not a search for drugs -- raises a red flag. See Alvarado, 420 Mass. at 553, 651 N.E.2d 824 ("The Commonwealth's contention that the search of the Buick was an inventory search is also defeated by the fact that the police enlisted the assistance of a canine in conducting the search"); Commonwealth v. Ortiz, 88 Mass. App. Ct. 573, 577, 39 N.E.3d 458 (2015) (judge's finding that inventory search was pretext was supported by police decision to assign traffic stop to State police officer "with his narcotics-sniffing dog in tow").
Here, the Commonwealth failed to establish that the decision to "put a drug dog" on the vehicle was made for a noninvestigatory purpose. See Oliveira, 474 Mass. at 13, 47 N.E.3d 395 (reasonableness of inventory search requires inquiry into officer's "true purpose"). Risteen **220 testified that he called for a canine search during the stop, and wrote in his police report that Blackwell arrived "on scene with his certified canine to further check the Infinit[i] sedan at E-4 [the State police barracks]." Risteen did not testify as to when during the encounter he decided to request a canine, or what prompted him to do so.
It may be that Risteen decided to call for a canine to search the vehicle prior to the initial roadside search, or that the discovery of marijuana in the trunk prompted the request. Because the Commonwealth had the burden of establishing that the police conducted a lawful inventory search, yet did not present any evidence to demonstrate that there was a legitimate need to "put a drug dog" on the defendant's vehicle, we cannot affirm the judge's ruling on this basis.
c. Automobile exception to the warrant requirement. Although we conclude that the motion judge's decision to deny the motion to suppress, on the grounds discussed, was not proper, we consider other reasons, advanced by the Commonwealth, that might support the judge's determination. See Commonwealth v. Va Meng Joe, 425 Mass. 99, 102, 682 N.E.2d 586 (1997) (reviewing court may affirm motion judge's decision on grounds different from those relied upon by judge, if those grounds are supported by record and judge's findings of fact). Accordingly, we turn to whether the search of the defendant's Infiniti was justified under the automobile exception to the warrant requirement.
Due to the inherent mobility of an automobile, and the owner's reduced expectation of privacy when stopped on a public road, police are permitted to search a vehicle based upon probable cause to believe that it contains evidence of a crime. Commonwealth v. Motta, 424 Mass. 117, 123-124, 676 N.E.2d 795 (1997). "The issue of paramount importance is whether the police, prior to the commencement of a warrantless search, had probable cause to believe that they would find the instrumentality of a crime or evidence pertaining to a crime in the vehicle" (quotations and citation omitted). Johnson, 461 Mass. at 49, 958 N.E.2d 25. The scope of a warrantless search of a vehicle conducted pursuant to this exception is defined by the object of the search, and extends to every part of the vehicle where there is probable cause to believe the object may be found. See *567 Commonwealth v. Cast, 407 Mass. 891, 906, 556 N.E.2d 69 (1990), citing United States v. Ross, 456 U.S. 798, 824, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Authority to search under the automobile exception exists "even when the police had ample opportunity to obtain a search warrant, provided **221 that there has been no unreasonable delay." Commonwealth v. Eggleston, 453 Mass. 554, 554, 903 N.E.2d 1087 (2009). See Johnson, supra at 46-47, 958 N.E.2d 25 (affirming search of vehicle for evidence of operation of motor vehicle while under influence of alcohol where "agitated" driver "reeked" of alcohol and was slurring his words and unsteady on his feet, and where officer observed half-empty bottle of cognac on dashboard of vehicle).
The defendant argues that the Commonwealth did not establish probable cause to believe that evidence relating to either the offense of operating a motor vehicle while under the influence of marijuana or possession of the loaded handgun would be found in the glove compartment. He argues, in addition, that the automobile exception does not apply where the officers had ample opportunity to secure a warrant to search the impounded vehicle. See Commonwealth v. Agosto, 428 Mass. 31, 34-35, 696 N.E.2d 924 (1998), quoting Commonwealth v. Markou, 391 Mass. 27, 30-31, 459 N.E.2d 1225 (1984) (while safety concerns may permit immediate search after towing vehicle from highway to safe environment, "[n]onetheless, we have not endorsed 'giving the police carte blanche to search without a warrant any time subsequent to a valid stop' ").
The Commonwealth contends that the officers' search of the glove compartment was permissible in order to search for (unspecified) evidence of separate crimes: operating a motor vehicle while under the influence of marijuana, and "based on the discovery of the loaded Smith and Wesson .380 and three bags of marijuana [found] during the inventory at the scene." See Johnson, 461 Mass. at 50, 958 N.E.2d 25. The delay in searching the vehicle was reasonable, argues the Commonwealth, because it had to be removed from the turnpike and towed to a safe location in order to conduct the search.
We conclude that the officers had adequate grounds to secure the vehicle and thereafter promptly to search the glove compartment for evidence related to the offense of operating the vehicle while under the influence of marijuana. See Ross, 456 U.S. at 825, 102 S.Ct. 2157 ; Motta, 424 Mass. at 123-124, 676 N.E.2d 795. As discussed, the officer had probable cause to believe, based on the defendant's appearance and his interactions with Risteen, as well as his admission to having smoked marijuana earlier, that the defendant's consumption of marijuana had diminished his "ability to operate a motor vehicle safely"; in addition, once the passengers had left the vehicle, Risteen saw marijuana leaves scattered on the rear passenger seat. See Connolly, 394 Mass. at 173, 474 N.E.2d 1106. Therefore, the officers **222 had authority to search the vehicle, pursuant to the automobile exception, for evidence pertaining to the offense of operating a motor vehicle while under the influence. See Johnson, 461 Mass. at 50, 958 N.E.2d 25. Contrast Daniel, 464 Mass. at 754-757, 985 N.E.2d 843. The search permissibly could extend to the locked glove compartment (to which the officers had a key) because it was reasonable for the officers to believe that it contained marijuana or implements used to consume marijuana. See Motta, supra at 122-124, 676 N.E.2d 795 (police entitled to search areas of vehicle where fruits of crime or evidence of crime might be found); Commonwealth v. Antobenedetto, 366 Mass. 51, 55, 315 N.E.2d 530 (1974) (search legitimate where it is for "instrumentality" *568 or "evidence" of crime).[5]
Finally, we reject the defendant's contention that the police unreasonably delayed the search. The tow truck arrived at the State police barracks at 1:50 P.M. Blackwell promptly initiated the search of the vehicle at 2 P.M. See Eggleston, 453 Mass. at 559, 903 N.E.2d 1087 ; Agosto, 428 Mass. at 34, 696 N.E.2d 924.
d. Ineffective assistance of counsel. In addition to his challenge to the denial of the motion to suppress, the defendant raises, for the first time on appeal, a claim of ineffective assistance of counsel.[6] He contends that his trial counsel's decision to concede that the defendant possessed the drugs found "under lock and key" in the glove compartment fell "measurably below that which would be expected of an ordinary fallible lawyer," and deprived him of "an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96-97, 315 N.E.2d 878 (1974).
The preferred method for raising claims of ineffective assistance of trial counsel is through a motion for a new trial. Commonwealth v. Zinser, 446 Mass. 807, 810, 847 N.E.2d 1095 (2006). "Relief on a claim of ineffective assistance based on the trial record is the weakest form of such a claim because it is 'bereft of any explanation by trial counsel for his actions and suggestive of strategy contrived by a defendant viewing the case with hindsight.' " Commonwealth v. Gorham, 472 Mass. 112, 116 n.4, 32 N.E.3d 1267 (2015), quoting **223 Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5, 770 N.E.2d 440 (2002). Relief may be afforded on such a claim "when the factual basis of the claim appears indisputably on the trial record." Gorham, supra, quoting Zinser, supra at 811, 847 N.E.2d 1095.
Here, trial counsel made an obviously strategic decision to concede that his client possessed the drugs found in a locked glove compartment, and advised the judge of this during a hearing on motions in limine immediately prior to voir dire of the venire. In his opening statement, counsel said, "I'm just going to be completely upfront with you right now, those drugs were [the defendant's] drugs. You can go ahead and find him guilty of those drugs, no question. They were in his car in a locked glove box. He had the key to the glove box, his drugs." Trial counsel then stated, by way of contrast, that the Commonwealth would be unable to prove the remaining (more serious) charges of operating a motor vehicle while under the influence of marijuana and possession of an unlawful firearm. "I am going to suggest to you that the Commonwealth's evidence on those charges are [sic ] going to be insufficient. And like I said, compare it to the drugs found in the glove box. Go ahead and find him guilty of the drugs in the glove box. Those are his. But the rest of it rests on assumptions and speculation that I am going to ask you not to engage in and at the end to find him not guilty of the remaining charges."
Later, in his closing argument, counsel again conceded that the defendant possessed *569 the items in the glove compartment, but asked the jury to consider that the Commonwealth's substitute chemist had not established that the substances were oxycodone and cocaine. Again, counsel urged the jury to compare the evidence from the glove compartment to the Commonwealth's proof that the defendant possessed the firearm and ammunition recovered from the trunk. He argued, "[I]t is simply insufficient for the police to have found something in the trunk of the car where there were three people inside and where two people, after [the defendant] was removed, went in and took their property out.... So compare that to what they found in the glove box. These are under lock and key. [The defendant] has the key. He's the gatekeeper. No one's getting in without his key. He possess the things in the glove box. That does not prove anything about the gun."
On this record, the defendant's claim of ineffective assistance is not indisputable. The Commonwealth established that the vehicle was registered to the defendant, and that the defendant had **224 the key to the glove compartment in his front pocket when he was arrested. It does not appear that trial counsel had any other viable theory of defense, and appellate counsel does not offer a viable alternative. At trial, counsel skillfully utilized this inculpatory evidence to highlight the Commonwealth's inability to prove the other charges. This strategy appeared to be successful; the jury acquitted the defendant of the firearms charges and of operating a motor vehicle while under the influence.
3. Conclusion. The order denying the motion to suppress is affirmed. The judgments are also affirmed.
So ordered.

The Commonwealth charged the defendant with six criminal offenses: operating a motor vehicle while under the influence of drugs (marijuana), in violation of G. L. c. 90, § 24 (1) (a )(1) ; unlawful possession of a firearm, in violation of G. L. c. 269, § 10 (a ) ; unlawful possession of ammunition, in violation of G. L. c. 269, § 10 (h ) (1) ; possession with intent to distribute a class B substance (oxycodone), in violation of G. L. c. 94C, § 32A (b ), as a subsequent offense; possession with intent to distribute a class B substance (cocaine) as a subsequent offense, in violation of G. L. c. 94C, § 32A (b ) ; and possession with intent to distribute a class D substance (marijuana), in violation of G. L. c. 94C, § 32C (a ). The defendant also was charged with two civil motor vehicle infractions: speeding on the Massachusetts Turnpike, in violation of 700 Code Mass. Regs. § 7.08(6)(a) (2013) (now § 7.09[6][a] ); and following too closely, in violation of 700 Code Mass. Regs. § 7.08(15) (2013) (now § 7.09[15] ). Before trial, the prosecutor reduced the charges of possession with intent to distribute oxycodone and cocaine to simple possession of those substances, and dismissed the charge of possession with intent to distribute marijuana.

Risteen did not conduct formal "field sobriety" tests of the defendant, as he knew from experience that "standardized field sobriety" tests are "not too good of an indicator regarding marijuana intake"; rather, he relied on his thirty years of training and experience with the State police, which included extensive specialized training in narcotics and sixteen years in a specialized unit.

At the time of the events at issue here, possession of one ounce or less of marijuana had been decriminalized, but remained a civil infraction. See St. 2017, c. 55.

See note 2, supra.

The search of the defendant's vehicle for evidence relating to a violation of G. L. c. 90, § 24 (1) (a )(1), stands in stark contrast to the impermissible searches conducted in Commonwealth v. Overmyer, 469 Mass. 16, 20, 11 N.E.3d 1054 (2014), and Commonwealth v. Cruz, 459 Mass. 459, 477, 945 N.E.2d 899 (2011), where "no specific facts suggest[ed] criminality."

The defendant did not indicate, at trial, his "intransigent and unambiguous objection" to his counsel's strategic decision to admit the defendant's possession of the items in the glove compartment. Accordingly, there is no structural error as discussed in McCoy v. Louisiana, --- U.S. ----, 138 S.Ct. 1500, 1507, 1511, 200 L.Ed.2d 821 (2018).